# Illinois Official Reports

## Appellate Court

---

### *People v. Acevedo*, 2018 IL App (2d) 160562

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL ACEVEDO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0562 |
| Filed | November 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 14-CF-1069; the Hon. Mark L. Levitt, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Erin S. Johnson, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, David J. Robinson, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    In the direct appeal of his conviction of unlawful possession of a weapon by a felon, defendant, Daniel Acevedo, argues that we should reverse his conviction and remand for a new trial because he did not knowingly waive his right to conflict-free counsel. Alternatively, he argues that he was improperly assessed a $250 DNA analysis fee and a $300 Violent Crime Victims Assistance Fund fee. For the reasons that follow, we reverse and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3    On February 11, 2015, defendant was indicted on one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)), one count of unlawful possession of firearm ammunition by a felon (*id.*), one count of defacing identification marks on a firearm (*id.* § 24-5(b)), one count of unlawful use of a weapon (*id.* § 24-1(a)(7)(ii)), and one count of obstructing justice (*id.* § 31-4(a)).[1]

¶ 4    A jury trial began on November 2, 2015. After the jury had been selected but before the trial began, the State brought to the trial court's attention that a *per se* conflict of interest existed between defense counsel and defendant. The following colloquy took place:

"[THE STATE]: Judge, we did have an issue we needed to spread of record. I did get a text from [defense counsel] this morning. Judge, I did get Lorena Montes served with a subpoena Monday afternoon after the jury was picked. Her name was on the Statement of Facts. She is alleged and we believe the evidence will show that she was in the vehicle with this defendant at the time our officers made an observation of the butt of a shotgun in the car. We did indicate to [defense counsel] that she may be a witness.

[Defense counsel] does represent Lorena Montes. There is one pending case that is set for trial in December. It is a Class A misdemeanor. It does involve this defendant as well as, obviously, this case does. I do intend to call Lorena Montes this morning or this afternoon to ask her numerous material facts regarding this particular case.

Having spoken with her I can spread of record that she would, in fact, deny being in the car with this defendant as they were on the interstate and deny that this defendant ever made any admissions to her. We believe the evidence is otherwise.

Judge, we do intend to call her for several different reasons and several facts that she will establish that we need to prove our case.

Judge, we're here with a *per se* conflict that the defense attorney represents Miss Montes and [defendant] contemporaneously.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: Judge, Miss Montes' case is 15 CM 195. It is set for trial before Judge Hughes on December 16th, 2015. I do represent her. I have represented her during the pendency of that case. It does derive from the situation that occurred here but after the fact, so none of the facts—

THE COURT: Of that case are germane to this case.

---

[1]The State dismissed the obstructing-justice charge prior to trial.

[DEFENSE COUNSEL]: I would argue they are not because it is an obstructing charge dealing with allegations that she may have tried to conceal or assisted in the concealment of [defendant] after the commission of this offense.

THE COURT: Okay. And have you gone through—obviously, I'm sure you have—all of the assertions that were made by the State today with [defendant]?

[DEFENSE COUNSEL]: I have, Your Honor, and I know he's prepared to answer the Court as to some of these as well, so it's not just my word. But we did cover the conflict, the ramifications of that, what we expect to happen if Lorena is called as a witness and how it affects him and his rights.

THE COURT: All right. Permission to speak to your client?

[DEFENSE COUNSEL]: Yes, Judge.

THE COURT: [Defendant], this is very serious, so I want to make sure that you are completely following what's happening here.

The State informed me that there is a *per se* conflict of interest, which means in this case, that your attorney contemporaneously, that means at the same time as, represents you and a State's witness. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And because of that representation, there are issues that may or may not come up during the course of his representation of you. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And did you discuss those with [defense counsel]?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You're entitled to have conflict-free counsel, which means in this case that if you desire, I will continue the case on your motion. I will get you a new attorney. You are not going to be required to continue with [defense counsel] if you think that the nature of his representation or anything about the conflict of interest would affect you adversely, which means in a bad way. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Did you discuss all those scenarios with [defense counsel]?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about what it involves right now?

THE DEFENDANT: No.

THE COURT: So do you have any decision which you would wish me to do in this case?

THE DEFENDANT: Just proceed with the same attorney.

THE COURT: So knowing everything that you know about this conflict, you desire to waive any objection you have to proceeding and to allow [defense counsel] to continue to represent you?

THE DEFENDANT: Yes.

THE COURT: Okay. And today, sir, I just want to ask you, have you taken any medication? Are you under the influence of any kind of drug or alcohol?

THE DEFENDANT: No, sir.

THE COURT: And you appear to be following everything I say, but have you had any difficulty understanding any of the concepts or anything that we've discussed today?

THE DEFENDANT: No, sir.

THE COURT: Very good.

[THE STATE]: I will spread of record as well that in case it becomes an issue later that the People of the State of Illinois are not offering Lorena Montes any consideration for her testimony. She has a pending case which from this point on she'll either have to straight plea or go to trial. We will not be making any offers, so there will not be a later claim by this defendant that after the fact we gave her a deal because of her testimony in this case. There is no offer to her, and there will not be an offer to her, and we believe, certainly, this conflict has been waived sufficiently.

THE COURT: I find that based on everything that I heard so far, my discussion with [defendant], I find that I've been informed of the nature and circumstances involved in this *per se* conflict. I am satisfied that the issues have been fully vetted, disclosed to me and to [defendant].

I do find that this is a waivable conflict and based on my discussion with [defendant] here today, I find that his waiver is knowing and voluntary. I will allow you to waive the conflict, [defendant], and you may proceed to trial with [defense counsel] since that is your desire. Okay?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. You can have a seat with your lawyer."

¶ 5 The evidence at trial generally established the following. At approximately 12:30 in the morning on April 20, 2014, Illinois State Police Sergeant Ken Benson was in his squad car when he observed a vehicle speeding on I-94 in Lake County. He activated his emergency lights and stopped the vehicle. He approached the driver's side of the vehicle and observed a male driver and a female passenger. The lighting was sufficient to allow Benson to see the driver's face and the passenger's face. While speaking with the driver, Benson saw what appeared to be a sawed-off shotgun lying in the backseat. It was located behind a baby seat. He could see that the entire handle of the gun was covered in black tape. When Benson asked the driver what was in the backseat, the driver "said something on the affect [*sic*] of there's nothing in the back seat, kind of just playing it off." Benson asked the driver to exit the vehicle. As Benson went to grab the door handle, the vehicle sped off. Benson ran to his squad car to advise dispatch what had happened. Using his onboard computer, Benson learned that the vehicle was registered to Lorena Montes. Benson could see Montes's driver's license photograph and recognized her to be the female passenger. Benson identified People's exhibit No. 4 as Montes's driver's license photograph and identifying information. While Benson remained on the scene, other officers were dispatched to Montes's address, where they were told that defendant was Montes's boyfriend. Using his onboard computer, Benson located defendant's driver's license photograph. Benson testified that when he saw the photograph, although defendant's hair was "slightly different," he believed defendant to be the driver of the vehicle. Benson identified People's exhibit No. 5 as defendant's driver's license photograph and identifying information. Officers were dispatched to defendant's address, where the

vehicle was located. Benson went to defendant's address and saw the vehicle. The gun was no longer in the backseat.

¶ 6    Benson testified further that, on April 23, 2014, he learned that a sawed-off shotgun had been found on an exit ramp about one-quarter mile away from the location of the traffic stop. He was shown People's exhibit No. 3, a picture of the gun, which had black duct tape on the handle. Benson identified it as the gun that he had seen in the backseat of the vehicle. Benson identified People's exhibit No. 2 as a video recording of the traffic stop that was taken from his squad car. The video was played for the jury.

¶ 7    Illinois State Police Trooper Roman Nebelski testified that he was on patrol on April 23, 2014, and was flagged down by a construction worker while exiting I-94 onto Belvidere Road. The worker gave him a sawed-off shotgun with black tape wrapped around the handle. There was a single unfired shotgun shell in the gun. Nebelski identified People's exhibit No. 3 as a photograph of the gun and People's exhibit No. 1 as the actual gun.

¶ 8    Mark Stammacher testified that, in April 2014, he was working on an exit ramp off I-94 when he found a sawed-off shotgun in the grass on the right side of the ramp, about 10 to 15 feet off the road. He flagged down a state trooper and gave him the gun. He identified People's exhibit No. 3 as a photograph of the gun.

¶ 9    Fred Tomasek, a forensic scientist with the Illinois State Police crime lab, testified that he examined People's exhibit No. 1. The gun was operational. The manufacturer's serial number had been partially scratched off.

¶ 10    Montes testified that she was 23 years old. She, along with her three-year-old son, lived with her parents and sisters in Lake Villa. Defendant was her son's father. In April 2014, she was dating defendant. He lived with his parents in Round Lake, and she sometimes spent the night there. She owned a black Saturn vehicle with a child's car seat in the back. Defendant did not have permission to drive her car, and he never used her car. On April 20, 2014, she drove her car to a friend's house in Chicago. Defendant was not with her. She parked her car in the driveway. She got drunk and spent the night at her friend's house. She thought that she "blacked out." When she woke up the next morning, her car was gone. She took the train to Round Lake. One of defendant's sisters picked her up and drove her to her parents' house. A few days later, she called the police and learned that her car had been towed. She believed that she called the Round Lake police. She denied that she was in a car that was pulled over by the Illinois State Police on April 20, 2014. She testified that she did not own a gun. She was shown People's exhibit No. 1 and testified that the gun was not hers and was never in her car.

¶ 11    On cross-examination, Montes testified that she never received any phone calls from the police concerning her car and that no one phoned her to tell her that the car was in their possession.

¶ 12    The parties stipulated that no fingerprints suitable for comparison were found on the gun and that defendant had been previously convicted of a felony.

¶ 13    The State rested. Defendant moved for a directed verdict and the motion was denied. Defendant presented no evidence.

¶ 14    The jury found defendant not guilty of possession of firearm ammunition by a felon and guilty of the remaining charges. Defendant's motion for a new trial was denied.

¶ 15    Following a sentencing hearing, the trial court sentenced defendant to 11 years in prison. Defendant filed a motion for reconsideration of his sentence, which the trial court denied.

Defendant timely appealed.

¶ 16                                  II. ANALYSIS

¶ 17        Defendant argues that he was denied his right to conflict-free counsel, because the trial court did not obtain a knowing waiver of that right. We agree.

¶ 18        A criminal defendant has the right to effective assistance of counsel, which includes the right to conflict-free representation from his attorney. *People v. Washington*, 101 Ill. 2d 104, 109-10 (1984); *People v. Stoval*, 40 Ill. 2d 109, 111 (1968). The supreme court has identified three situations in which a *per se* conflict of interest exists: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *People v. Fields*, 2012 IL 112438, ¶ 18. Here, there is no dispute that, because defense counsel represented a State witness, a *per se* conflict of interest existed. "Unless a defendant waives his right to conflict-free representation, a *per se* conflict is automatic grounds for reversal." *Id.* The question here is whether the conflict was validly waived by defendant. To be valid, a defendant's waiver of a conflict must be knowing. *People v. Olinger*, 112 Ill. 2d 324, 339 (1986). "A defendant will not be deemed to have waived a conflict unless he is admonished as to the existence of the conflict *and its significance*." (Emphasis added.) *Id.* We indulge every reasonable presumption against defendant's waiver. See *People v. Lawson*, 163 Ill. 2d 187, 208-09 (1994).

¶ 19        We find that defendant's waiver was not knowing. To be sure, the existence of the conflict was brought to the trial court's attention and discussed with defendant. The State told the court that it intended to call Montes, what it believed the evidence would show concerning Montes's involvement in defendant's offense, and the substance of Montes's anticipated testimony. The court asked defense counsel whether he went over the State's assertions concerning Montes with defendant. Defense counsel told the court that he did cover with defendant "the conflict, the ramifications of that, what we expect to happen if [Montes] is called as a witness and how it affects [defendant] and his rights." The court told defendant that "there are issues that may or may not come up." The court asked defendant whether he had "discuss[ed] all those scenarios with [defense counsel]," and defendant indicated that he had.

¶ 20        Although the record makes clear that defendant was aware of the *existence* of the conflict, the record does not establish that defendant was advised of the *significance* of the conflict. The record does not reveal the specifics of the discussions between counsel and defendant. Counsel never explained to the court what information he had provided to defendant concerning the ramifications of the conflict. Nor did defendant indicate that he knew the possible impact that the conflict could have on counsel's ability to zealously represent him. The court told defendant that the conflict was "serious" and that there were "issues that may or may not come up," but it never explained to defendant, in a way he might understand, how the conflict could impact counsel's representation of him. See *People v. Poole*, 2015 IL App (4th) 130847, ¶ 36 (finding waiver invalid, in part because "the record does not reveal whether defendant was advised of the conflict in a way he might understand how it could affect his representation"). For instance, the court never advised defendant that, due to counsel's representation of Montes, counsel could be reluctant to cross-examine Montes in a way that would be adversarial to her case but beneficial to defendant's. In sum, because the record does not show

- 6 -

that defendant was advised of the significance of the conflict, we find that defendant's waiver of conflict-free counsel was not knowing.

¶ 21   Based on the foregoing, we reverse defendant's conviction and remand for a new trial. We find no double-jeopardy bar to retrial where the evidence presented against defendant was such that a rational trier of fact could have found him guilty beyond a reasonable doubt. *People v. Fillyaw*, 409 Ill. App. 3d 302, 320 (2011). However, we note that our determination regarding the evidence is not binding on retrial and does not express our opinion as to defendant's ultimate guilt or innocence. *People v. Jackson*, 2012 IL App (1st) 102035, ¶ 21. Given this holding, we need not consider defendant's alternative arguments.

¶ 22                                III. CONCLUSION

¶ 23   For the reasons stated, we reverse and remand for a new trial.

¶ 24   Reversed and remanded.