2022 IL App (1st) 200692-U

No. 1-20-0692

Second Division
August 2, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| THE PEOPLE OF THE STATE OF | ) | Circuit Court of |
| ILLINOIS, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 15 CR 11836 |
| v. | ) | |
| | ) | |
| ANDRE JACKSON, | ) | Honorable |
| | ) | Brian K. Flaherty |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The summary dismissal of defendant's postconviction petition is affirmed where his claims are both forfeited and meritless.

¶ 2    Defendant-appellant Andre Jackson appeals from the summary dismissal of his petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant argues that the circuit court erred in dismissing his petition

where he stated arguable claims that (1) his trial counsel was ineffective for failing to investigate a potentially exculpatory witness and (2) the trial court inadequately admonished him about certain aspects of his right to conflict-free counsel. We affirm for the following reasons.

¶ 3                                    I. BACKGROUND

¶ 4     The facts of this case are fully laid out in our order affirming defendant's convictions on direct appeal. *People v. Jackson*, 2019 IL App (1st) 160484-U. We recount them here to the extent necessary to resolve the issues presented.

¶ 5     Defendant and codefendant James Parson were each charged with attempted first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm in relation to the 2013 drive-by shooting of Rondale Standors. Defendant was tried by a jury while Parson was tried in a separate but simultaneous bench trial. [1]

¶ 6     On the day of jury selection for defendant's trial, defense counsel informed the court that approximately two months prior he had received a phone call for someone purporting to be Shaquilla Meeks, an eyewitness to the shooting. The caller claimed that defendant was not involved in the shooting in any way. Defense counsel did not memorialize the conversation or take any steps to verify the caller's identity.

¶ 7     Defense counsel also informed the court that he had discussed the matter with defendant, that defendant still wished to retain defense counsel as his attorney, and that defendant had signed an affidavit waiving "any and all conflict of [counsel] being a potential witness."[2] Defendant confirmed that this was correct.

---

[1] Parson was convicted of aggravated battery and aggravated discharge of a firearm, but acquitted of attempted murder. His convictions and sentence were affirmed on direct appeal. *People v. Parson*, 2018 IL App (1st) 162348-U. He is not a party to this appeal.

[2] The affidavit does not appear in the record on appeal.

¶ 8    The trial court then admonished defendant that "[i]f Ms. Meeks testifies, your lawyer will not be allowed to get into any conversation with her, will not be able to question her regarding any alleged phone call that she may or may not have made to your attorney. Do you understand that?" Defendant replied that he understood. The court further informed defendant that he "would be giving up that part of [his] ability to cross-examine the witness" because defense counsel would otherwise "have to withdraw from [his] case and another attorney would have to come in and file an appearance and represent [him]." Defendant again stated that he understood and wished to have defense counsel remain on his case.

¶ 9    The trial evidence established that on the night of September 21, 2013, Standors was among a group of people standing near a parked car on Park Avenue in Dolton, Illinois. Around 6:30 p.m., a burgundy Chevrolet Impala drove past the area. Defendant was the driver, Parson was the front passenger, and Corey Blanchard was in the backseat. As they drove past Standors, Parson said, "What's up now[?]" and fired numerous gunshots, striking Standors in both legs. The Impala then left the scene.

¶ 10    At trial, Alfred Rowels testified that on the night of the shooting, he was with some friends on Kanawha Avenue in Dolton, which is the street next to Park Avenue. At approximately 6:30 p.m., Rowels saw a burgundy Impala drive down Kanawha. He recognized defendant as the driver and Parson as the front passenger. There was a third person in the backseat, but Rowels could not identify them. Defendant and Parson nodded to Rowels as they drove past. Rowels then observed the Impala turn right toward Park and heard 8-10 gunshots "seconds later." Rowels later identified defendant as the driver in a photo array and Parson as the passenger in a physical lineup.

¶ 11    Standors testified to being shot and the injuries he suffered. However, he stated that he did not know who was in the Impala and did not remember viewing a photo array, speaking to an

assistant state's attorney (ASA) at the police station, or identifying a suspect from a lineup. When confronted with his statement to an ASA, Standors identified his signature but stated that he did not remember signing the document. He denied telling the police that Parson was the shooter.

¶ 12    Meeks testified that she was seated in the parked car that Standors was next to at the time of the shooting. Meeks saw a dark colored car approach but could not remember who was inside that car. She heard gunshots and then saw Standors on the ground, shot. Meeks testified that she could not recall any other details from the shooting. She also did not remember speaking to an ASA or testifying before a grand jury.

¶ 13    The State called ASAs Eleanor San and Anna Sedelmaier, who had taken written statements from Standors and Meeks, respectively. The statements were also published to the jury.

¶ 14    According to Standors' statement, he was talking with friends by the parked car when he heard someone say, "What's up now[?]" Standors looked in the direction of the voice and saw a burgundy Impala about eight feet away. Parson stuck a gun out of the passenger window and opened fire, hitting Standors in both legs. Standors was transported to Christ Hospital, where he underwent surgery for his injuries. At the hospital, Dolton police detective Major Coleman showed Standors a photo array. Standors identified Parson as the shooter from the photo array.

¶ 15    In Meeks' statement, she stated that she was seated in the parked car when she saw the Impala turn the corner and head slowly in her direction. As it approached, she saw that defendant was the driver, Parson was the front passenger, and Blanchard was in the back seat. Parson said, "What's up now[?]" and fired multiple shots in her and Standors' direction before driving away. Afterwards, she saw Standors on the ground, shot.

¶ 16    Later that night, Meeks was at an apartment in Calumet City with Blanchard and Parson. There, Parson told her that if she said anything about the shooting, he would do to her what he did to Standors, which Meeks understood to mean that he would kill her.

¶ 17    The State also called ASA Jason Coelho, who elicited Meeks' testimony before the grand jury. ASA Coelho testified that Meeks' grand jury testimony was substantively identical to her statement to ASA Sedelmaier.

¶ 18    The defense rested without presenting evidence. The jury found defendant guilty of attempted murder, aggravated battery with a firearm, and aggravated discharge of a firearm. He was sentenced to concurrent terms of 21 years in prison for attempted murder and 10 years in prison for aggravated battery with a firearm.

¶ 19    Defendant filed a direct appeal, arguing, among other things, that defense counsel was ineffective for failing to argue in the trial court that he could have represented defendant while also testifying and cross-examining Meeks about the phone call. *Jackson*, 2019 IL App (1st) 160484-U, ¶33. We affirmed, finding that defendant acquiesced to the trial court's ruling by waiving his right to cross-examine Meeks about the phone call. *Id.* ¶ 36. We also found that, regardless of defendant's acquiescence, defense counsel's conduct did not result in prejudice because cross-examining Meeks about the phone call would have been insufficient to combat the "overwhelming testimony showing that defendant was driving the Impala at the time of the offense." *Id.* ¶ 39.

¶ 20    Defendant filed a *pro se* postconviction petition under the Act, arguing, as relevant here, that (1) trial counsel was ineffective for "compelling [him] to unintelligently waive his constitutional right to cross-examine" Meeks, and (2) the trial court gave "impermissible admonishments *** which coerced him to waive his constitutional right to confront [Meeks.]"

¶ 21    The circuit court summarily dismissed the petition on February 26, 2020, reasoning that defendant knowingly waived his right to confront Meeks about the phone call and that the arguments in his petition could have been raised on direct appeal.

¶ 22    This appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24    The Act provides a three-stage procedural mechanism through which a criminal defendant may assert that his conviction was the product of a substantial denial of his constitutional rights. *People v. Davis*, 2014 IL 115595, ¶ 13. At the first stage, which is the relevant stage here, a defendant typically files a *pro se* petition for relief. Because most petitions are written by defendants with little legal knowledge or training, the threshold to survive the first stage is low. *People v. Tate*, 2012 IL 112214, ¶ 9. In reviewing a petition at the first stage, the circuit court must determine whether, after taking all well-pleaded factual allegations as true, the petition is frivolous or patently without merit. *Id.* The court may summarily dismiss the petition as frivolous or patently without merit if it has no arguable basis in either law or fact. *People v. Johnson*, 2021 IL 125738, ¶ 26. Additionally, because a postconviction petition is a collateral attack on the judgment, issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *People v. Taliani*, 2021 IL 125891, ¶ 53. We review the summary dismissal of a postconviction petition *de novo*. *People v. Henderson*, 2011 IL App (1st) 090923, ¶ 19.

¶ 25    On appeal, defendant contends that his petition raised two arguable claims that should have advanced to the second stage. First, he asserts that he raised an arguable claim that his trial counsel was ineffective for failing to investigate Meeks as a potential exculpatory witness after receiving the phone call from somebody purporting to be Meeks. Second, defendant maintains that he stated

an arguable claim that the trial court erred in admonishing him about his right to conflict-free counsel.

¶ 26    However, we find both claims to be forfeited, as they could have been raised on direct appeal. To avoid forfeiture, defendant asserts that his ineffective assistance claim depends on facts outside of the trial record, specifically (1) his affidavit attached to the petition and (2) information that might be learned from speaking to Meeks and trial counsel. This argument is unpersuasive. Defendant's affidavit simply avers that the information contained in his petition is true and correct to the best of his knowledge. The petition itself makes no new factual allegations. Although defendant points out that his claim could theoretically be bolstered by information from Meeks and trial counsel, he does not even allege what that information might be. While we are mindful that the Act's affidavit requirements may be somewhat relaxed for a *pro se* defendant at the first stage, the defendant must still supply some factual basis for his claims. *People v. Allen*, 2015 IL 113135, ¶ 24. In short, defendant has not identified any information from outside the trial record that would have prevented him from raising his ineffective assistance claim on direct appeal. Thus, the claim is forfeited.

¶ 27    We also note that, forfeiture aside, the claim is meritless. To advance to the second stage, defendant was required to show that (1) it is arguable that counsel's performance fell below and objective standard of reasonableness and (2) it is arguable that defendant was prejudiced as a result. *Tate*, 2012 IL 112214, ¶ 19. This is not a case where we need to speculate as to what Meeks' testimony might have been, as she testified that she could not remember any details other than the fact that the shooting occurred. But even if an investigation would have revealed that Meeks was in fact the caller, it would have, at best, impeached her statements to ASA Sedelmaier and the grand jury. However, on direct appeal we explained that such impeachment would not have

changed the result of the trial in light of the other "overwhelming testimony showing that defendant was driving the Impala during the offense." *Jackson*, 2019 IL App (1st) 160484-U, ¶¶ 39-40. Thus, defendant cannot show arguable prejudice, and his ineffective assistance claim would therefore fail even if it were not forfeited.

¶ 28    Turning to defendant's claim regarding the trial court's admonishments, we note that defendant does not attempt to explain why the issue could not have been raised on direct appeal. As such, the claim is forfeited.

¶ 29    Beyond forfeiture, defendant's claim is again meritless. The right to unconflicted counsel can be waived if done knowingly, meaning that the defendant has been admonished as to the existence of his attorney's conflict and its significance. *People v. Olinger*, 112 Ill. 2d 324, 339 (1986). "The duty to admonish the defendant as to the general nature of the conflict does not mean that the trial court must painstakingly detail every potential ramification of a potential conflict." *Id.*

¶ 30    Defendant challenges the court's admonishments on the basis that they did not apprise him of certain "background information," namely (1) what cross-examination is and that and he had a right to it, and (2) that he had the right to have different counsel appointed if he did not want to waive the conflict. However, a review of the record shows that the admonishments in this case were undeniably sufficient. First, there is no dispute that defendant understood the nature of the potential conflict was because defense counsel received exculpatory information in a phone call with someone purporting to be Meeks. The trial court expressly admonished defendant that waiving this conflict would mean "giving up *** part of your ability to cross-examine" Meeks in that defense counsel would "not be able to question her regarding any alleged phone call that she may or may not have made to [counsel]." Defendant stated that he understood. The court further

admonished defendant that if defense counsel withdrew from the case in order to testify about the phone call, "another attorney would have to come in and file an appearance and represent you." Defendant again stated that he understood and wished for defense counsel to continue to represent him. Thus, defendant's contentions are belied by the record.

¶ 31 *People v. Acevado*, 2018 IL App (2d) 160562, upon which defendant relies, is clearly distinguishable. There, the defendant was pulled over while driving his girlfriend's car and charged with unlawful possession of a weapon by a felon after the officer observed a sawed-off shotgun in the backseat. *Id.* ¶ 5. A conflict arose because the defendant's trial counsel also represented the defendant's girlfriend, who was to be called as a witness and was a passenger in the car during the traffic stop. *Id.* ¶ 4. The trial court admonished the defendant only that the conflict was "very serious" and that there were "issues that may or may not come up during the course of [counsel's] representation[.]" *Id.* On appeal, the Second District found that the defendant's waiver was not done knowingly because, although he was informed of the existence of the conflict, he was not informed of its significance. *Id.* ¶ 20. For example, the trial court did not advise the defendant that his counsel might be reluctant to cross-examine his girlfriend in ways that would be beneficial to his case but detrimental to hers. *Id.*

¶ 32 Of course, the case at hand presents a completely different factual scenario. Additionally, unlike in *Acevado*, the trial court here fully advised defendant of the specific consequences of proceeding with conflicted counsel, *i.e.*, that counsel would not be able to cross-examine Meeks about the phone call. Thus, the trial court's admonishments in this case were sufficient for defendant to knowingly waive his right to conflict-free counsel.

¶ 33                                III. CONCLUSION

¶ 34 For the reasons stated, we affirm the judgment of the circuit court.

¶ 35    Affirmed.