NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231166-U

NO. 4-23-1166

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 3, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Brown County |
| TREVOR KECK, | ) | Nos.  22MT41, |
| Defendant-Appellant. | ) | 22TR288 |
| | ) | |
| | ) | Honorable |
| | ) | Jerry J. Hooker, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Doherty and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed and remanded for a new hearing on the State's motion to disqualify defendant's counsel, concluding the law was misapplied in the prior proceedings and, as a result, it was unable to determine the correctness of the circuit court's disqualification of defendant's counsel.

¶ 2    Defendant, Trevor Keck, was charged with operating an uninsured motor vehicle, speeding, and street racing. The State moved to disqualify defendant's retained counsel because another attorney in counsel's firm was representing a State's witness in an unrelated case. The circuit court granted the State's motion to disqualify and denied defendant's motion to reconsider. Defendant appeals the disqualification pursuant to Illinois Supreme Court Rule 604(g) (eff. Oct. 19, 2023). For the reasons that follow, we reverse and remand for a new hearing on the State's motion to disqualify defendant's counsel.

¶ 3                                  I. BACKGROUND

¶ 4                              A. Appearance of Counsel

¶ 5          In July 2022, the State charged defendant by citation and complaint with operating an uninsured motor vehicle (625 ILCS 5/3-707 (West 2022)) and speeding (*id.* § 11-601(b)) in Brown County case No. 22-TR-288. The citation and complaint were issued by Cody Shaffer, a Brown County sheriff's deputy. That same month, attorney Gerald Timmerwilke of the law firm Blickhan, Timmerwilke and Woodworth entered an appearance on behalf of defendant. Thereafter, the State charged defendant by information with street racing (*id.* § 11-506(a)(3), (d)(1)), a Class A misdemeanor, in Brown County case No. 22-MT-41. The additional charge stemmed from the same incident upon which the original charges were based, and Timmerwilke entered an appearance on behalf of defendant in case No. 22-MT-41.

¶ 6                              B. Motion to Disqualify Counsel

¶ 7          In May 2023, the State filed a motion to disqualify Timmerwilke and a supporting memorandum. The State averred it had learned Shaffer, the investigating officer in this case, had been represented by Timmerwilke's law partner, attorney Dennis Woodworth, since January 2023 in an unrelated case where Shaffer was charged with multiple felonies, including a Class X felony. The State also averred Shaffer interviewed and took statements from defendant and several witnesses. As for its charges against defendant, the State indicated it intended to call Shaffer as a witness to establish defendant was the driver of the involved vehicle. The State indicated it may also have to call Shaffer to rehabilitate witnesses with their prior statements. As for defendant's defense against the charges, the State asserted Timmerwilke may have to cross-examine Shaffer and, in doing so, might use confidential information obtained during his firm's representation of Shaffer against him and might challenge his credibility with his pending criminal charges. The State also asserted Timmerwilke may have to call Shaffer as a witness to impeach other witnesses

with the statements they provided to Shaffer. The State argued the contemporaneous representation of both defendant and Shaffer by Timmerwilke's law firm resulted in a "*per se* conflict of interest" and there had been no valid waiver of said conflict by defendant. In addition, the State asserted, even if defendant waived the conflict, Timmerwilke should be disqualified because (1) it was entitled to a fair trial in which the defense does not use confidential information to attack a State's witness and in which the State's witness would not be potentially influenced to give testimony favorable to a client of the law firm representing him and (2) allowing a law firm to contemporaneously represent both a witness for the State and a defendant could lead a jury and the public to conclude a trial is not fair or the defense bar is being allowed to behave unethically.

¶ 8                         C. Response to the Motion to Disqualify Counsel

¶ 9                In June 2023, defendant, through Timmerwilke, filed a response to the State's motion to disqualify Timmerwilke and a supporting memorandum. Timmerwilke acknowledged the contemporaneous representation of defendant and Shaffer by his law firm "could give rise to a *per se* conflict." Timmerwilke averred he disclosed the conflict to defendant, who was 17 years old at the time, as well as defendant's mother after the conflict was brought to his attention, and defendant and his mother wished to waive the conflict. A written waiver executed by defendant's mother was attached to the response. As for defendant's defense against the charges, Timmerwilke indicated he had no reason to impeach Shaffer or call his testimony into doubt because Shaffer would convey the following undisputed facts: (1) he responded to a call-in report, (2) he spoke with defendant and the witnesses at the scene, and (3) he issued defendant a speeding ticket. Timmerwilke also indicated he may have to call Shaffer as a witness to elicit information about a written statement he received from a witness to attack the credibility of that witness. As for the State's concern about a fair trial, Timmerwilke asserted he was not privy to any confidential

- 3 -

information which could be used against Shaffer and, to the extent the State believed Shaffer might fabricate his testimony for the purpose of appeasing the law firm representing him, the State could inquire into any bias in its examination of Shaffer. Finally, as for the appearance of impropriety, Timmerwilke emphasized defendant had chosen to waive his right to a jury trial. Timmerwilke argued defendant's constitutional right to counsel of choice should not be infringed upon.

¶ 10                     D. Hearing on the Motion to Disqualify Counsel

¶ 11          On July 5, 2023, the circuit court conducted a hearing on the State's motion to disqualify Timmerwilke. Defendant was present at the hearing. The court entertained arguments from the State and Timmerwilke.

¶ 12          The State initially acknowledged it had referred to a "*per se* conflict," which it noted was not "necessarily" correct. It explained, "A *per se* conflict has to be raised by a motion of the defendant, so usually he's convicted, files a post[ ]conviction motion alleging ineffective assistance because of a conflict, then it's treated as a *per se*." Nevertheless, the State maintained, "the analysis is exactly the same between the two instances of *per se* or just the conflict that I have raised."

¶ 13          The State averred Shaffer would testify concerning his investigation and interviews with defendant and others at the scene. The State asserted, despite Timmerwilke's belief he would not have to cross-examine Shaffer based upon his expected testimony, Timmerwilke may need to impeach him with his pending criminal charges if his testimony changed. The State also asserted Timmerwilke may have confidential information about Shaffer which could be used against him. The State suggested Shaffer could believe giving testimony incriminating to defendant, a client of the same law firm which represented him, could cause resentment and negatively impact his representation in his case, thereby potentially influencing his testimony.

- 4 -

¶ 14        The State argued the interests affected by the conflict in this case overcame the presumption of counsel of choice. Specifically, the State asserted its interest in a fair trial and the circuit court's interest in avoiding an appearance of impropriety overcame the presumption. In so arguing, the State asserted, even if the court admonished defendant concerning the conflict and obtained a valid waiver, it could still disqualify Timmerwilke based upon the other interests affected by the conflict.

¶ 15        In response, Timmerwilke initially asserted "there [was] no conflict," while, at the same time, asserting the circuit court needed to inquire of defendant as to his "understand[ing] what the waiver is."

¶ 16        Timmerwilke averred he had no need to cross-examine Shaffer based upon his expected testimony. He also averred he had no confidential information about Shaffer which could be used against him; he was not involved in Shaffer's case. Timmerwilke acknowledged he may have to examine Shaffer if witnesses provided testimony inconsistent with the prior written statements obtained by Shaffer. Timmerwilke asserted he had explained the conflict to defendant and his mother, and defendant wanted to waive the conflict and proceed with his counsel of choice.

¶ 17        Timmerwilke argued the interests affected by the conflict did not overcome the presumption of defendant's counsel of choice. Timmerwilke asserted defendant was willing to waive the conflict, he did not plan to cross-examine Shaffer, he did have any confidential information which could be used against Shaffer, and any appearance of impropriety was alleviated by the fact the case was set for a bench trial on relatively minor charges.

¶ 18        In reply, the State argued Timmerwilke's defense strategy was "irrelevant" because he may have to cross-examine Shaffer if his testimony changed or examine him if the other witnesses provided statements inconsistent with their prior written statements. The State also

argued their small community would likely become aware of the situation.

¶ 19      After hearing from the State and Timmerwilke, the circuit court indicated it would take the matter under advisement. Timmerwilke did not remind the court of his request for it to examine defendant concerning the conflict and his desire to waive it.

¶ 20                E. Ruling on the Motion to Disqualify Counsel

¶ 21      On July 12, 2023, the circuit court entered an order granting the State's motion to disqualify Timmerwilke. The court found the contemporaneous representation of defendant and Shaffer by the same law firm amounted to a "*per se* conflict" of interest. The court recognized the presumption in favor of defendant's counsel of choice but found that presumption had been overcome by the interests affected by the conflict. Initially, as for a waiver of the conflict, the court noted it did "not believe the minor [and] mother, given their lack of involvement in the Judicial System, can make a knowing waiver of the *per se* conflict that exists." The court found the State's interest in a fair trial favored disqualification because it had no way of knowing how Shaffer would respond to questions posed by the same law firm representing him in a serious felony case. The court found its interest in avoiding an appearance of impropriety favored disqualification given the possibility their "small community" would learn "that the same law firm represented the defendant and the State's witness at the same time." Finally, the court found the likelihood of reversal of any conviction favored disqualification because it would have been difficult to admonish defendant "of all the subtle conflicts that could arise."

¶ 22                F. Motion to Reconsider the Disqualification

¶ 23      On July 31, 2023, defendant, through Timmerwilke, filed a motion to reconsider the disqualification. Timmerwilke did "not dispute the finding that a *per se* conflict exists." Instead, Timmerwilke asserted the circuit court erred in (1) finding a person with little exposure

to the judicial system is incapable of executing a valid waiver of a conflict, (2) declining to examine defendant and/or his mother about the waiver, and (3) finding the interests affected by the conflict outweighed defendant's right to counsel of his choice. Timmerwilke asked the court, in reconsidering the disqualification, to consider the "extreme prejudice and hardship" to defendant if Timmerwilke was disqualified at that stage of the proceedings.

¶ 24    G. Supplement to the Motion to Reconsider the Disqualification

¶ 25    On September 11, 2023, defendant, through Timmerwilke, filed a supplement to the motion to reconsider. Timmerwilke asked the circuit court to consider a recent factual development when reconsidering the disqualification: Woodworth no longer represented Shaffer.

¶ 26    H. Response to the Motion to Reconsider the Disqualification

¶ 27    Also on September 11, 2023, the State filed a response to the motion to reconsider and a supporting a memorandum. The State asserted (1) there was a "*per se* conflict of interest," (2) the circuit court was not required to examine defendant or his mother, and (3) the court correctly concluded the interests affected by the conflict overcame the presumption of counsel of choice.

¶ 28    I. Hearing on the Motion to Reconsider the Disqualification

¶ 29    On September 12, 2023, the circuit court conducted a hearing on defendant's motion to reconsider the disqualification. Defendant was present at the hearing.

¶ 30    At the outset of the hearing, Timmerwilke asked the circuit court to inquire of defendant, who had since turned 18 years old, as to his understanding "of the waiver of conflict." Timmerwilke noted he previously asked the court to inquire of defendant, but "[i]t just never got done." Timmerwilke provided the court with a written waiver executed by defendant; the written waiver is not, however, part of the record on appeal. The court granted Timmerwilke's request.

¶ 31       On inquiry of the circuit court, defendant indicated he was a high school graduate. While in high school, he took a civics class, where he learned "[a] little bit" about the court system but did not "remember too much of it." The court asked defendant about the waiver he executed. Defendant testified he discussed the waiver with Timmerwilke and believed it meant "[t]hat he's still my attorney and I don't believe that he will be not fair to me." The court asked defendant: "Do—when—when you—you've been here the whole time. Do—when we talk about conflicts of interest, do you—do you understand what a conflict of interest could be or might—might be?" Defendant responded, "Not really."

¶ 32       The circuit court asked Timmerwilke about his prior statements indicating he discussed "some things that could occur" with defendant and his mother. Timmerwilke explained they discussed Woodworth's representation of Shaffer in an unrelated case and the expected testimony of Shaffer in defendant's case.

¶ 33       Defendant, on further inquiry of the circuit court, acknowledged Shaffer had interviewed other witnesses. Both defendant and Timmerwilke, on inquiry of the court, acknowledged at least one of those witnesses gave conflicting statements. Defendant acknowledged Shaffer may be called as a witness by Timmerwilke to address the prior statements.

¶ 34       Defendant indicated he discussed "waiving [the] conflict" with his mother. He explained they concluded "[t]hat we were fine with going ahead with my attorney in that he—if we were to find another one that we'd have to—is this would drag out longer and it just—I—I don't know. My attorney already knows everything, and we feel comfortable with him."

¶ 35       The circuit court asked Timmerwilke if he had any additional questions, to which Timmerwilke indicated he did not. The court asked the same of the State, to which the State indicated it did not have any questions.

¶ 36        Following the examination of defendant, Timmerwilke asked the circuit court to inquire of defendant's mother. Timmerwilke noted she had been a legal secretary for 18 years. Timmerwilke also noted she worked for the Quincy Police Department as an evidence technician and routinely testified on evidentiary matters. The court granted Timmerwilke's request.

¶ 37        Defendant's mother, when asked by the circuit court about the discussions she had with defendant concerning the conflict, explained:

> "We just discussed the fact that [Timmerwilke] already has a lot of knowledge about his case, he knows the details, he knows my son, he knows all of the witness statements, and—and we discussed the fact that, you know, the conflict is that the—the firm represents both individuals, [Shaffer], as the Sheriff's Deputy at the time, and then my son when the traffic accident occurred. So we discussed what the conflict is, what, you know, potential [e]ffects it could, you know, have on the outcome of his trial, if we get to that point, and that he didn't feel—and we don't feel that [Timmerwilke] will represent him any differently just because [Shaffer] did not witness anything. He took statements. So we just discussed how that [a]ffects the outcome."

¶ 38        Timmerwilke argued defendant "fully understood the conflict" and was "waiving it." Timmerwilke also argued the other interests affected by the conflict did not outweigh the presumption in favor of counsel of choice. Timmerwilke invited the circuit court to consider the hardship on defendant to get a new attorney at that point in the proceedings.

¶ 39        In response, the State argued the examination of defendant indicated he did not

fully understand the conflict in order to waive it. The State also maintained the interests affected by the conflict overcame the presumption of counsel of choice. In addressing the interests affected, the State asserted the circuit court should not consider the particular facts of the case because "the very nature of [the] *per se* conflict rule precludes inquiry."

¶ 40    In reply, Timmerwilke maintained the circuit court's examination of defendant established a knowing waiver of the conflict. Timmerwilke also asked the court if it had seen his supplement to the motion to reconsider, to which the court indicated it had.

¶ 41    After examining defendant and defendant's mother and hearing from Timmerwilke and the State, the circuit court took the matter under advisement. In doing so, the court noted, "there's no question it's a *per se* conflict"; the question, instead, was whether there was "a knowing and intelligent waiver that—that would surpass the *per se* conflict."

¶ 42    J. Ruling on the Motion to Reconsider the Disqualification

¶ 43    On October 2, 2023, the circuit court entered an order denying defendant's motion to reconsider the disqualification. The court found the representation of defendant and Shaffer by the same law firm created a "*per se* conflict" of interest. The court noted "[t]he fact the law firm no longer represents [Shaffer] does not extinguish the *per se* conflict." The court found: "There are various impeachment problems that can arise if any of the four potential witnesses change their version of the events. The court does not believe an [18-year-old] defendant with no experience in the judicial system could understand them all." The court concluded there was no valid waiver of the conflict. The court also considered the hardship on defendant to find a new attorney, finding any hardship minimal given the nature of the charges and the stage of the proceedings. The court did not otherwise address the other interests affected by the conflict.

¶ 44    K. Petition for Leave to Appeal

¶ 45        On October 19, 2023, defendant filed a petition for leave to appeal, which this court later granted. See Ill. S. Ct. R. 604(g) (eff. Oct. 19, 2023).

¶ 46        This appeal followed.

¶ 47                            II. ANALYSIS

¶ 48        On appeal, defendant argues this court should reverse the disqualification of Timmerwilke and remand the matter for trial because the circuit court misapplied the law during the proceedings below. Specifically, defendant asserts the court erred by (1) failing to examine either him or his mother at the hearing on the motion to disqualify, (2) finding he was incapable of executing a valid waiver based upon his age and limited exposure to the criminal justice system, and (3) finding the interests affected by any conflict outweighed the presumption in favor of counsel of choice.

¶ 49        The State, in response, argues this court should affirm the disqualification because the circuit court did not commit any error, or at least any potential error which was not later cured. Specifically, the State asserts, assuming *arguendo* it was error for the court not to examine defendant or his mother at the hearing on the motion to disqualify, the error was cured by the court's reconsideration and examination of them at the hearing on the motion to reconsider. The State also asserts the court reasonably concluded defendant could "not waive the *per se* conflict given the nuances and difficulties in understanding such a conflict." Finally, the State asserts, regardless of whether defendant entered a valid waiver, the court reasonably concluded the State's interest in a fair trial and its interest in avoiding an appearance of impropriety outweighed the presumption in favor of defendant's counsel of choice. As for its interest in a fair trial, the State emphasizes, "The potential use of confidential information given by [Shaffer] to his own counsel[ ] to impeach him in the current proceedings is simply too great to ignore."

¶ 50                                    A. Standard of Review

¶ 51            The disqualification of a defendant's counsel of choice will not be reversed on

appeal unless "there has been a clear abuse of discretion." *People v. Holmes*, 141 Ill. 2d 204, 222,

565 N.E.2d 950, 958 (1990). "Generally, a court abuses its discretion when its decision is fanciful,

arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *People v.

Ortega*, 209 Ill. 2d 354, 359, 808 N.E.2d 496, 500-01 (2004). A court also abuses its discretion "if

it fails to apply the proper criteria when it weighs the facts." *Id.* at 360. Therefore, "our inquiry

must consider both the legal adequacy of the way the *** court reached its result as well as whether

the result is within the bounds of reason." *Id.*

¶ 52                                    B. The Applicable Law

¶ 53            The sixth amendment of the United State Constitution guarantees criminal

defendants the assistance of counsel. U.S. Const., amend. VI. This constitutional guarantee

encompasses both (1) a right to the effective assistance of counsel and (2) a right to counsel of

choice. *Holmes*, 141 Ill. 2d at 217. Either of these rights may be implicated where there are

concerns that an attorney's allegiance to the client is diluted by conflicting interests or inconsistent

obligations. See *id.* at 220-22.

¶ 54            Where, as in this case, the State moves to disqualify defense counsel on conflict-

of-interest grounds and the defendant objects, the defendant's right to counsel of choice is

implicated. *Id.* at 217. The right to counsel of choice is not absolute, and it may be circumscribed

on conflict-of-interest grounds. *Id.* There is, however, a presumption in favor of defendant's

counsel of choice. *Id.* at 223.

¶ 55            Our supreme court has set forth a two-part test governing State challenges to a

defendant's counsel of choice on conflict-of-interest grounds. *Ortega*, 209 Ill. 2d at 360-62. The

first step requires the circuit court to determine whether defense counsel "has a specific professional obligation that actually does conflict or has a serious potential to conflict with defendant's interests." *Id.* at 361. The second step requires the court to determine "whether the interests threatened by the conflict or potential conflict are weighty enough to overcome the presumption [in favor of the defendant's counsel of choice]." *Id.*

¶ 56     As for the first step of the two-part test governing State challenges to a defendant's counsel of choice on conflict-of-interest grounds, the issue is *not* whether there is a *per se* conflict of interest. As our supreme court has made clear, "the concept of a *per se* conflict applies only to cases where a defendant claims ineffective assistance of counsel due to his attorney's conflict." *Id.* at 364; see also *Holmes*, 141 Ill. 2d 220-21. The issue, again, is whether defense counsel "has a specific professional obligation that actually does conflict or has a serious potential to conflict with defendant's interests." *Ortega*, 209 Ill. 2d at 361. Determining whether defense counsel has a specific professional obligation that conflicts with defendant's interests will often depend on predicting future events. As a result, the "more common case[ ]" is one in which the court finds a serious "potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat v. United States*, 486 U.S. 153, 163 (1988).

¶ 57     As for the second step of the two-part test governing State challenges to a defendant's counsel of choice on conflict-of-interest grounds, our supreme court has identified several interests or factors which may be considered in determining whether the interests threatened by the conflict or potential conflict are weighty enough to overcome the presumption in favor of the defendant's counsel of choice:

> "(1) the defendant's interest in having the undivided loyalty of
>
> counsel; (2) the State's right to a fair trial in which defense counsel

- 13 -

acts ethically and does not use confidential information to attack a State's witness; (3) the appearance of impropriety should the jury learn of the conflict; [and] (4) the probability that continued representation by counsel of choice will provide grounds for overturning a conviction." *Ortega*, 209 Ill. 2d at 361-62.

Another factor identified by the court is whether "the State's claim that a conflict warrants disqualification is the result of overreaching." *Id.* at 362. As the court has made clear, these interests or factors are not the only ones that may be considered; instead, consideration may be given to any potential interest of the defendant, the State, the witnesses, or the public. *Id.*

¶ 58 Additionally, with respect to the second step of the two-part test governing State challenges to a defendant's counsel of choice on conflict-of-interest grounds, several interests or factors may be alleviated by the defendant knowingly waiving the actual or potential conflict. *Id.* at 364. To make such a waiver, the defendant must be examined by the circuit court concerning the existence and significance of the conflict. See *People v. Olinger*, 112 Ill. 2d 324, 339, 493 N.E.2d 579, 587 (1986). As the First District recently stated, "[t]his is no easy task." *People v. Hill*, 2023 IL App (1st) 150396, ¶ 17, 218 N.E.3d 1217. As such, we believe the State, as the party seeking to infringe upon the defendant's constitutional right to counsel of choice, as well as defense counsel, who is seeking to continue to represent the defendant despite a potential or actual conflict, should assure an appropriate examination of the defendant is conducted by the court.

¶ 59                                    C. This Case

¶ 60 In this case, the circuit court effectively considered whether Timmerwilke should be disqualified as counsel on two separate occasions. The court initially considered the issue following the hearing on the State's motion to disqualify. The court then, following the hearing on

defendant's motion to reconsider the disqualification, considered the issue anew based upon new arguments and facts.

¶ 61        The circuit court, both in its order granting the State's motion to disqualify Timmerwilke and in its order denying defendant's motion to reconsider the disqualification, commenced its analyses by determining the representation of defendant and Shaffer by the same law firm amounted to a "*per se* conflict" of interest. The issue of whether there was a *per se* conflict of interest was not, however, the issue before the court. Instead, the issue before the court—the first step of the two-part test governing State challenges to a defendant's counsel of choice on conflict-of-interest grounds—was whether Timmerwilke had a specific professional obligation that actually conflicted or had a serious potential to conflict with defendant's interests. More specifically, the issue, based upon the new information before the court at the hearing on the motion to reconsider, was whether Timmerwilke had a specific professional obligation stemming from his partner's prior representation of Shaffer that actually conflicted or had a serious potential to conflict with defendant's interests. This issue was not addressed by the court.

¶ 62        The failure to correctly identify and address the first step of the two-part test governing State challenges to a defendant's counsel of choice on conflict-of-interest grounds led to a failure to properly admonish defendant of any actual or potential conflict at issue. Certainly, defendant was admonished and present for discussions concerning the possibility of Timmerwilke having to examine Shaffer at trial. However, the significance of Timmerwilke examining a former client of his law partner was not addressed, *i.e.*, how it might affect Timmerwilke's examination of that former client. See, *e.g.*, *People v. Acevedo*, 2018 IL App (2d) 160562, ¶ 20, 121 N.E.3d 530.

¶ 63        Likewise, the failure to correctly identify and address the first step of the two-part

test governing State challenges to a defendant's counsel of choice on conflict-of-interest grounds led to a failure to appropriately consider the interests affected by any actual or potential conflict of interest. While the State and the circuit court may have been rightly concerned about the State's interest in a fair trial and the court's interest in avoiding an appearance of impropriety when the same law firm contemporaneously represented both defendant and Shaffer, the circumstances changed when the court allowed defendant to introduce new facts at the hearing on the motion to reconsider. The law firm no longer represented Shaffer, alleviating the concerns of the State and the court that Shaffer may be influenced to give testimony favorable to another client of the law firm to secure better representation. Additionally, despite the State's continued concern on appeal about Timmerwilke potentially having confidential information, he has repeatedly expressed he does not have any such information. As the record stands, the only remaining expressed concern not impacted by any waiver is the court's interest in avoiding an appearance of impropriety. The State does not suggest that factor, by itself, would be sufficient to overcome the presumption in favor of counsel of choice. See *People v. Buckhanan*, 2017 IL App (1st) 131097, ¶ 36, 70 N.E.3d 1278 ( "[T]he appearance of impropriety alone is a slender reed on which to justify disqualification of counsel.").

¶ 64        In sum, we find the failure to correctly identify and address the first step of the two-part test governing State challenges to a defendant's counsel of choice on conflict-of-interest grounds led to additional failures precluding a determination by this court as to whether the result reached by the circuit court was within the bounds of reason. *C.f. Ortega*, 209 Ill. 2d at 364 (affirming the circuit court's judgment despite the court's misapplication of the law where the court reasonably concluded those interests not affected by any waiver outweighed the presumption in favor of the defendant's counsel of choice). In so finding, we recognize the court was not solely

responsible for the misapplication of the law; both the State and Timmerwilke repeatedly addressed the issue as one of a *per se* conflict of interest.

¶ 65        It is, therefore, necessary for this court to reverse and remand for a new hearing on the State's motion to disqualify Timmerwilke. On remand, the parties should address, and the circuit court should determine, whether (1) Timmerwilke has a specific professional obligation stemming from his partner's prior representation of Shaffer that actually does conflict or has a serious potential to conflict with defendant's interests, (2) defendant understands the actual or potential conflict and its significance and desires to waive said conflict, and (3) the interests threatened by the conflict or potential conflict are weighty enough to overcome the presumption in favor of defendant's counsel of choice.

¶ 66                              III. CONCLUSION

¶ 67        For the reasons stated, we reverse and remand for a new hearing on the State's motion to disqualify defendant's counsel.

¶ 68        Reversed; cause remanded.