2023 IL App (1st) 150396

No. 1-15-0396

Opinion filed March 24, 2023

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 18710 (01) |
| | ) | |
| MARTELL HILL, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Lyle and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Martell Hill appeals his conviction of first degree murder and raises the

following issues: (1) did Hill make a knowing and intelligent waiver of his trial counsel's *per se*

conflict of interest because he was not informed of the significance of the conflict, (2) did the State

fail to prove Hill's guilt beyond a reasonable doubt because the eyewitnesses either recanted their

identification or identified Hill one year after the crime, (3) did the trial court abuse its discretion

in admitting gang evidence because the evidence lacked relevance, and (4) did the trial court

commit manifest error in denying Hill's *pro se* posttrial motion raising a claim of ineffective

assistance of counsel because Hill's trial counsel failed to call witnesses whose testimony could

have impeached the prosecution witness and established Hill's alibi defense? For the following reasons, we affirm.

¶ 2                                          I. BACKGROUND

¶ 3       On the night of October 25, 2009, Jamar Taylor sat alone in his car, talking to Courtney Jordan who sat in his own car parked next to Taylor's. The two chatted for a few minutes when a man approached the driver's side of Taylor's vehicle. The man, later identified as Martell Hill, fired a gun at Taylor multiple times before he fled. Taylor died, and an autopsy revealed 12 gunshot entrance wounds on Taylor's body.

¶ 4       Several individuals at the scene—including Jordan, Christopher Jackson, and Jonathan Walker—declined to speak to police on the night of the shooting. As the police investigation continued, however, Jordan and Walker identified Hill as the man who shot and killed Taylor and testified to the same before the grand jury. Jackson also testified before the grand jury that Hill was the shooter. Over a year after the grand jury proceedings, Jordan recanted his identification of Hill when he spoke with a defense investigator and signed an affidavit stating that he did not see the shooter.

¶ 5       A few months after this recantation, Jordan was charged with possession of a controlled substance in an unrelated case. Hill's trial counsel, Tod Urban, filed an appearance as Jordan's attorney in that case. Urban's representation of Jordan continued for about one year until he withdrew shortly before Hill's trial. The State moved to disqualify Urban from representing Hill based on Urban's representation of Jordan, one of the prosecution witnesses in Hill's case. Although initially granting the motion to disqualify, the trial court reconsidered the ruling and allowed Urban to stay on the case after a hearing at which Hill was present.

¶ 6    At trial, Jackson and Walker again testified that Hill was the shooter. Jordan, who had previously recanted his identification of Hill, maintained that he did not see who shot Taylor. The State also questioned Jordan about his drug case and Urban's representation of Jordan in that case.

¶ 7    A jury found Hill guilty of first degree murder of Taylor. Hill then filed a *pro se* motion for a *Krankel* hearing, alleging ineffective assistance of trial counsel, and after a hearing, the trial court declined to appoint new counsel to pursue the claim on Hill's behalf. *People v. Krankel*, 102 Ill. 2d 181 (1984). The trial court sentenced Hill to 50 years in prison for first degree murder, plus 30 years for personally discharging a firearm that proximately caused death, for a total of 80 years' imprisonment. Hill's motion for a new trial and motion to reconsider sentence were denied. This appeal followed.[1] Ill. S. Ct. R. 606 (eff. Dec. 11, 2014).

¶ 8                                    II. ANALYSIS

¶ 9                                A. Conflict of Interest

¶ 10    Hill argues that he is entitled to a new trial because his trial counsel had a *per se* conflict of interest that Hill did not knowingly and intelligently waive because he was not informed of the significance of the conflict. Hill's trial counsel (Urban) had once represented a prosecution witness (Jordan) who identified Hill as the shooter but later recanted his testimony. The State argues that Hill forfeited the issue because he failed to raise any issue related to the adequacy of the trial court's admonitions or his knowing and intelligent waiver in his posttrial motion. He did raise an issue related to the prosecution's reference to the conflict in closing argument, but the posttrial motion is devoid of any argument related to his knowing waiver of the conflict. The posttrial

---

[1]After filing of the notice of appeal in 2015, this appeal was dismissed for want of prosecution in 2019. After the September 4, 2019 supervisory order of the supreme court reinstated the appeal, both parties have obtained multiple extensions of time to file the record and briefs.

motion raises no issue as to Hill's knowing and intelligent waiver.[2] See 725 ILCS 5/116-1(c) (West 2012) ("The motion for a new trial shall specify the grounds therefor."). The issue is forfeited, but because it is a recurring question without an abundance of guidance in our caselaw, we will address the merits. See *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65.

¶ 11    The sixth amendment of the United States Constitution guarantees the right to effective assistance of counsel (*Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980)), which entitles criminal defendants to counsel's undivided loyalty, free from conflicting interests (*People v. Washington*, 101 Ill. 2d 104, 110 (1984)). With respect to this right to conflict-free representation, our supreme court has identified three types of *per se* conflicts of interest: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *People v. Fields*, 2012 IL 112438, ¶ 18. If there is a *per se* conflict, prejudice is presumed, and the defendant is not required to show that his counsel's performance was in any way affected by the conflict. *People v. Hernandez*, 231 Ill. 2d 134, 143 (2008). Unless a defendant waives the conflict, a *per se* conflict is automatic grounds for reversal. *Fields*, 2012 IL 112438, ¶ 18.

¶ 12    Here, Urban represented Jordan for a year during the period he represented Hill—after Jordan recanted but before Hill's trial. It is evident that Urban contemporaneously represented

---

[2]Inexplicably, Hill does not even respond to the State's assertion of forfeiture. When an appellant fails to respond to an opposing party's forfeiture argument, that is an additional basis for finding the appellant's arguments forfeited. *People v. Kampas*, 2020 IL App (3d) 170464, ¶ 22; *Work Zone Safety, Inc. v. Crest Hill Land Development, L.L.C.*, 2015 IL App (1st) 140088, ¶ 31.

Jordan, a prosecution witness, and the parties concede that this contemporaneous representation is a *per se* conflict.

¶ 13    Hill argues that this conflict was one that is "unwaivable" or "unconsentable." He cites no authority in support of this argument. In fact, the leading treatise on legal ethics provides the contrary: "Most, but not all, of the rules regulating conflicts of interest provide that consent of the affected client or clients will be sufficient to allow the representation to continue despite the conflict, thus waiving or 'curing' it." 1 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 10.8 (3d ed. 2001) (hereinafter, Hazard on the Law of Lawyering). Clients may consent to a lawyer's representation, notwithstanding a conflict. See Ill. R. Prof'l Conduct (2010) R.1.7 cmts. 6, 14 (eff. Jan. 1, 2010); Hazard on the Law of Lawyering § 11.6 ("Model Rule 1.7(a) nominally permits lawyers to continue simultaneous representation, even where concurrent clients of the lawyer are 'directly adverse' to each other, so long as the affected clients give their informed consent. *** Some forms of concurrent representation are so obviously nonconsentable that they are rarely attempted and thus not much discussed."); see also *Chandra v. Chandra*, 2016 IL App (1st) 143858, ¶ 38 (the language of Rule 1.7 suggests that a conflict of interest in concurrent representation "does not automatically invalidate that representation").

¶ 14    Did Hill *knowingly* and *intelligently* waive his right to conflict-free representation? See *Fields*, 2012 IL 112438, ¶ 18 (*per se* conflict is automatic grounds for reversal absent a defendant's waiver); *People v. Olinger*, 112 Ill. 2d 324, 339 (1986) (a waiver of a conflict must be knowing). A defendant will not be deemed to have waived a conflict unless he is admonished as to the existence of the conflict and its significance. *Olinger*, 112 Ill. 2d at 339. The existence of the conflict was brought to the trial court's attention by the State's motion to disqualify Hill's trial

counsel (Urban). After initially granting the motion, the trial court held a hearing, with Hill present, on Urban's motion for reconsideration. Stating that she was reconsidering her earlier ruling because Hill had said that he wanted Urban to represent him despite any conflict, the trial court admonished Hill with respect to the conflict, prompting the following colloquy:

"THE COURT: Mr. Hill, you were here when the State's Attorney made a motion to withdraw, for your attorney to be disqualified and I granted it. And I am reconsidering his motion now because you had told me that you wanted Mr. Urban to represent you despite any potential conflict, if one exist [*sic*] with witness Courtney Jordan. Is that my understanding?

HILL: Yes.

* * *

THE COURT: Mr. Urban had represented Courtney Jordan who was a listed witness in this case against you. Mr. Urban had represented Courtney Jordan on another matter where Courtney Jordan himself was charged with a Class X drug case carrying a very large penitentiary sentence if convicted. Are you aware of that?

HILL: Yes.

* * *

THE COURT: If there is a conflict between — If a conflict exists because Mr. Urban represented Mr. Jordan, and Mr. Jordan is now a witness against you, are you willing to waive or in other words say it's okay because of the conflict that you still want Mr. Urban to represent you?

HILL: I still want Mr. Urban to represent me.

THE COURT: Are you willing to waive or give up any potential conflict that exists?

HILL: Yes.

THE COURT: Are you waiving the conflict because anybody threatened you or promised you anything about waiving it?

HILL: No, ma'am.

THE COURT: Are you waiving this conflict of your own free will?

HILL: Yes, ma'am.

THE COURT: And do you know that right now the way this matter stands I have granted the State's motion to disqualify Mr. Urban[?] So that means unless I reconsider, you would have to find another attorney. If you could not afford one, the Public Defender would be appointed to represent you. If you waive the conflict and I reappoint Mr. Urban, you would not be able to say on appeal, well there was a conflict because Mr. Urban had represented Courtney Jordan, and there would be a possibility that he spoke to Courtney Jordan about this case. You would be giving up the right to say that on appeal. Do you understand that?

HILL: Yes, ma'am."

The colloquy makes clear that Hill was aware of the existence of the conflict, having acknowledged before the trial court that he knew Urban had represented Jordan. The trial court confirmed Hill's knowledge of the conflict multiple times and repeatedly asked whether he still wanted Urban to be his attorney. The trial court also clearly explained that if he waives the conflict, he would not be able to raise the conflict issue on appeal. Hill insisted that his choice of counsel was Urban. Indeed,

at a subsequent court appearance, a month later, the trial court again confirmed Hill's desire to waive his counsel's conflict.

¶ 15    This colloquy, however, does not stand alone in informing Hill's waiver. The trial court had initially granted the State's motion to disqualify counsel. That motion delineated the risk of the jury learning of the conflict and contemplated the relationship between Hill, Jordan, and their counsel becoming a topic for impeachment. Further, in her written ruling granting the State's motion, the trial court recounted the problem of counsel "cross-examining a witness who gave a recantation at the same time counsel represented him in a pending case." Subsequently, Urban, who had already withdrawn from representing Jordan before the ruling, brought his motion for reconsideration. At that hearing, Jordan testified that he never discussed the Hill case with Urban. Hill was present when the motion was argued. More importantly, at this pretrial hearing, he witnessed the State examine Jordan and another witness (Dorothy Taylor) about Jordan's relationship with Urban. It could hardly come as a surprise then that, at trial, the State would rigorously examine Jordan, a recanting witness, and explore potential biases, including his relationship with Hill's counsel.

¶ 16    Hill understood the conflict and its consequence, and he was nonetheless adamant about having Urban represent him. See *People v. Becerril*, 307 Ill. App. 3d 518, 525 (1999) ("knowledgeable assent by defendant vitiates any claim of conflict of interest"). Hill argues that the trial court's admonitions were inadequate to fully apprise him of the consequences of the conflict, but he relies on authority where the trial court did not engage in an extensive colloquy with the defendant but merely told the defendant that " 'there are issues that may or may not come up.' " *People v. Acevedo*, 2018 IL App (2d) 160562, ¶¶ 4, 19. Further, as we have seen, Hill's

waiver was informed not only by his colloquy with the trial court but also by the entirety of the hearing, including the examination of Jordan about his relationship with Hill's counsel.

¶ 17    The challenge for a careful trial judge is to ensure that the waiver is in fact knowingly and intelligently made by a defendant who understands the particular character of the conflict. This is no easy task. "The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Wheat v. United States*, 486 U.S. 153, 162-63 (1988). Ultimately, whether a waiver is made knowingly and intelligently depends on the context of a particular case, but the more specific and tailored the inquiry, the more likely a valid waiver. See *People v. Carr*, 2020 IL App (1st) 171484, ¶ 33 (finding a waiver invalid because the defendant did not knowingly waive the conflict); *Acevedo*, 2018 IL App (2d) 160562, ¶ 20 (same). Useful guidance is found in the trial court's handling of the issue below: the trial court advised the defendant of his right to conflict-free representation and the danger of a conflicted representation. The trial court confirmed that the defendant made the decision freely and addressed the economic reality of retaining new counsel. The trial court took testimony and heard arguments that further informed the defendant's decision, and the trial court confirmed the defendant's decision at a subsequent court appearance nearly one month later. As a further safeguard, some courts have advised defendants to confer with independent counsel before accepting a waiver. 3 Wayne R. LaFave *et al.*, Criminal Procedure § 11.9(c) (4th ed. Nov. 2022 Update) (collecting cases where courts have insisted that the defendant first consult with independent counsel before considering a waiver). While each of these steps may not be required to secure a valid waiver, they help to ensure that a defendant fully comprehends his decision and also to create a record from which the validity of the waiver can be discerned.

¶ 18    It is worth remembering, however, that even if a defendant knowingly and intelligently waives the conflict, the trial court has "substantial latitude" to decline to accept the waiver and may still disqualify counsel. *Wheat*, 486 U.S. at 163; *People v. Ortega*, 209 Ill. 2d 354, 358-59 (2004). The sixth amendment right to counsel of choice is not absolute, and trial judges have a duty to ensure that criminal trials are conducted consistent with notions of fair play and within the ethics standards of the legal profession. *Wheat* and *Ortega* set out factors a trial court weighs in ordering disqualification (consistent with the sixth amendment), but those cases do not necessarily require disqualification.[3] *Wheat*, 486 U.S. at 162 ("[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it *may* decline a proffer of waiver." (Emphasis added.)). "Trial courts need latitude" (*Ortega*, 209 Ill. 2d at 358), and these matters are entrusted to the trial court's discretion. As the *Wheat* court observed, trial courts confronting the disqualification versus waiver question can reach opposite conclusions "with equal justification." *Wheat*, 486 U.S. at 164. The same could be said of the trial court's rulings here, first disqualifying counsel and later accepting a knowing and intelligent waiver—they fall squarely within the trial court's discretion.

¶ 19                            B. Sufficiency of the Evidence

¶ 20    Hill contends that the State failed to prove his guilt beyond a reasonable doubt because out of the three eyewitnesses who identified Hill as the shooter, two had recanted the identification before trial and the third witness did not identify him until a year after the crime. When a court reviews a challenge to the sufficiency of the evidence, the question is "whether, after viewing the

---

[3]Curiously, Hill argues the *Ortega* factors, but because his counsel was *not* disqualified, those factors have no application to his case.

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (Internal quotation marks omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22.

¶ 21    Walker and Jordan recanted before trial, telling a defense investigator that Hill was not the shooter or that he did not see the shooter. However, at trial, Walker testified that Hill was the shooter. Jordan testified that he did not see the shooter, but the jury also heard testimony regarding Jordan's prior identification of Hill to the prosecution and to the grand jury. After hearing the testimony and weighing the witnesses' credibility, the jury credited their identification of Hill. It is well settled that the determinations of witnesses' credibility and the weight given their testimony are exclusively within the province of the jury, and it is for the jury to resolve any conflicts in the evidence. *People v. Collins*, 106 Ill. 2d 237, 261-62 (1985). Further, the one-year lapse before Jackson's identification of Hill does not destroy Jackson's credibility. See *People v. Rodgers*, 53 Ill. 2d 207, 214 (1972) ("The lapse of time goes only to the weight of the testimony, a question for the jury, and does not destroy the witness's credibility."). Jackson knew Hill for 20 years, and the jury could have simply discounted any risk of misidentification, despite the delay in coming forward. Further, Jackson had been consistent in his identification of Hill throughout the proceedings.

¶ 22    Hill also argues that the witnesses gave varying descriptions of the shooter. The only arguable inconsistency Hill points to is with respect to the shooter's clothing: Jackson and Walker

testified that the shooter was wearing a white or yellow shirt, and Jordan had previously described the shooter as wearing a black hoodie over a yellow shirt. Again, it is the jury's duty to resolve conflicting testimony. *McLaurin*, 2020 IL 124563, ¶ 22. Discrepancies or omissions in a witness's description of the defendant "do not in and of themselves generate a reasonable doubt as long as a positive identification has been made." *People v. Slim*, 127 Ill. 2d 302, 309 (1989). The witnesses' descriptions were consistent as to the yellow shirt, and the discrepancy due to an additional layer of clothing in Jordan's description does not amount to a reasonable doubt.

¶ 23    As to the contention that there was no forensic evidence linking Hill to the crime, physical evidence is not required to sustain a conviction, and the testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). The evidence in fact corroborated the witnesses' accounts of the shooting: at least a dozen shots were fired, the victim was shot from the driver side, and the victim's car collided with a parked car after the shooting. Lastly, as to motive of the crime, the State introduced evidence relating to the ongoing gang dispute between Hill and the victim. Viewing all evidence in the light most favorable to the State, the evidence was such that a rational trier of fact could have found him guilty beyond a reasonable doubt.

¶ 24                    C. Admission of Gang-Related Evidence

¶ 25    Next, Hill argues that the trial court abused its discretion in admitting gang evidence because the gang evidence at trial was irrelevant and did not establish any of the bases that the trial court stated in admitting the evidence. See *People v. Lucas*, 151 Ill. 2d 461, 489 (1992) ("Whether evidence is relevant and admissible is within the discretion of the trial court."). The State contends that this issue, too, is forfeited because Hill failed to contemporaneously object to the admission

of the evidence during trial and did not raise the issue in his posttrial motion. In criminal cases, a defendant preserves an issue for review by "(1) raising it in either a motion *in limine* or a contemporaneous trial objection, and (2) including it in the posttrial motion." *People v. Denson*, 2014 IL 116231, ¶ 11. Hill objected to the admission of gang evidence in his response to the State's motions *in limine* (*id.* ¶ 13 (the defendant's response to a motion *in limine* preserved his objection for appeal)), and he raised the issue in his posttrial motion. That is sufficient to preserve the issue for our review.

¶ 26    Gang-related evidence may be admitted "so long as it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect." *People v. Johnson*, 208 Ill. 2d 53, 102 (2003). Evidence that a defendant is a member of a gang or is involved in gang-related activity is admissible only where there is sufficient proof that membership or activity in the gang is related to the crime charged. *People v. Strain*, 194 Ill. 2d 467, 477 (2000). At trial, Jackson testified that he and his family members are members of the New Breeds gang. Jackson described the gang's structure and hierarchy and testified that the victim was also a member. At the time of the murder, the street on which the murder took place was New Breeds territory, and the members were fighting each other over money made from drug sales. As to Hill's affiliation with a gang, Jackson testified, "I thought he was [a New Breed], but I don't know." However, Jackson and Hill frequently greeted each other with the New Breeds handshake, suggesting Hill's familiarity with the gang. Courtney Jordan testified that the victim was tired of being in the gang and was ready to get out.

¶ 27    One of the purposes for which gang evidence is admissible is to "provide a motive for an otherwise inexplicable act." (Internal quotation marks omitted.) *People v. Villarreal*, 198 Ill. 2d

209, 233 (2001). The testimony as to gang affiliation of Hill and the victim, an internal dispute within the gang at the time of the murder, and the location of the murder being a part of the New Breeds territory was relevant to provide context to the crime which was otherwise inexplicable. Further, the evidence also corroborated the witnesses' identification testimony that they knew Hill and the victim in the context of gang affiliation. See *People v. Morales*, 2012 IL App (1st) 101911, ¶¶ 46-48 (gang membership evidence was admissible to support the witness identification of the defendant and to explain the witnesses' reluctance to promptly speak to the police). Based on the record, we cannot say that the trial court abused its discretion in admitting gang-related evidence.

¶ 28                                    D. *Krankel* Inquiry

¶ 29    Lastly, Hill contends that the trial court committed manifest error in not appointing new counsel and denying his *pro se* motion raising an ineffective assistance of counsel claim. A common law procedure has developed from the supreme court's decision in *Krankel* that governs a *pro se* posttrial claim alleging ineffective assistance of counsel, serving "the narrow purpose of allowing the trial court to decide whether to appoint independent counsel" to argue the claim. (Internal quotation marks omitted.) *People v. Jackson*, 2020 IL 124112, ¶ 95; *People v. Krankel*, 102 Ill. 2d 181 (1984). A trial court is not automatically required to appoint new counsel any time a defendant claims ineffective assistance of counsel. *Jackson*, 2020 IL 124112, ¶ 97. Rather, the trial court must first examine the factual basis underlying the claim. *Id.* If the trial court "determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). If the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's motion, we will reverse only if the trial court's

action was manifestly erroneous. *Jackson*, 2020 IL 124112, ¶ 98. Manifest error is error that is clearly evident, plain, and indisputable. *Id.*

¶ 30    Hill argues that the trial court should have appointed new counsel to pursue his claims where he alleged that his counsel failed to call several witnesses whose testimony would have established Hill's alibi defense and impeached the key prosecution witnesses. These individuals would have testified that the shooter was wearing all black or dark-colored clothing and that Walker, a prosecution witness, was on the street corner at the time of the shooting, not on a porch as he testified. Additionally, Hill's cousin would have testified that Hill was watching her children on the night of the shooting.

¶ 31    During the hearing, counsel explained that he was aware of these potential witnesses through discovery and that he determined that they were of no help to the defense based on his due diligence. He also stated that he had spoken to Hill's cousin and that she was unable to verify Hill's alibi. " 'Whether to call certain witnesses and whether to present an alibi defense are matters of trial strategy, generally reserved to the discretion of trial counsel.' " *Id.* ¶ 106 (quoting *People v. Kidd*, 175 Ill. 2d 1, 45 (1996)). Hill's allegations plainly concern matters of trial strategy. Also, the trial court noted that she thinks "as a matter of fact, [trial counsel] did a wonderful job of representing [Hill]." See *People v. Roddis*, 2020 IL 124352, ¶ 53 ("[T]he court can 'base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face.' " (quoting *Moore*, 207 Ill. 2d at 79)). Accordingly, the trial court's determination that Hill's *pro se* allegations of ineffective assistance of counsel lack merit is not manifestly erroneous.

¶ 32                                      III. CONCLUSION

¶ 33     The judgment of the circuit court of Cook County is affirmed.

¶ 34     Affirmed.

*People v. Hill*, 2023 IL App (1st) 150396

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-CR-18710(01); the Hon. Angela M. Petrone, Judge, presiding. |
| **Attorneys for Appellant:** | Jodi L. Garvey and Patrick W. Blegen, of Blegen & Garvey, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Daniel Piwowarczyk, and Lisanne P. Pugliese, Assistant State's Attorneys, of counsel), for the People. |