2025 IL App (1st) 241153-U

No. 1-24-1153

Order filed April 7, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 231189639 |
| | ) | |
| ANGELA BUCHANAN, | ) | Honorable |
| | ) | Regina Mescall, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm defendant's conviction for battery where the evidence was sufficient to prove beyond a reasonable doubt that she caused bodily harm to the victims.

¶ 2     Following a bench trial, defendant Angela Buchanan was found guilty of two counts of battery (720 ILCS 5/12-3(a)(1) (West 2022)) and sentenced to one year of supervision, a drug and alcohol evaluation, and anger management counseling. On appeal, defendant argues that the evidence was insufficient to prove her guilty beyond a reasonable doubt due to inconsistencies in

the complaining witnesses' testimony and the State's failure to prove defendant caused them bodily harm. We affirm.

¶ 3    Defendant was charged with two counts of battery. One count alleged that she knowingly and intentionally caused bodily harm to Kyzele Buford by striking Buford multiple times in the face, head, and body with a fist causing bruising, swelling, and lacerations. The other count alleged she caused bodily harm to Cherry Powell by grabbing Powell by the collar causing pain to Powell's neck and shoulders.[1]

¶ 4    At trial, Powell testified that on May 23, 2023, at approximately 7:30 p.m., she was standing outside talking to her niece, Buford, who was in a parked vehicle in a vacant lot. Defendant arrived in a vehicle driven by her daughter, Amya Wordlow, and exited the vehicle to converse with Buford's friend who was in the driver's seat of Buford's vehicle. Powell identified defendant and Wordlow in court and stated that she did not know them but had seen them around.

¶ 5    Defendant began "making different comments" to Buford's friend, so Powell told Buford to roll Buford's window up. Defendant then stated, "that B she rolling up the window, she see me to him." Buford exited her vehicle and stated, "I'm not gon' be too many more Bs" and that she was not trying to fight defendant. Powell stood between Buford and defendant who swung at Buford and missed. Then, Wordlow, who had gone into a building, ran "across the lot," tackled Buford to the ground, and struck her. Powell attempted to block defendant from hitting Buford,

[1] Defendant's daughter, Amya Wordlow, who was also charged in the incident, was tried in a separate but simultaneous bench trial. Although defendant asserts in her brief on appeal that she and Wordlow were tried jointly, Wordlow was represented by separate counsel and provided testimony in her own case-in-chief that was not adopted by defendant's counsel for defendant's case-in-chief. Nevertheless, both parties recite Wordlow's testimony even though defendant's counsel did not adopt it. We do not consider Wordlow's testimony with the exception of clarifying the spelling of Wordlow's first name, which is spelled variously throughout the record on appeal but she spelled as "A-m-y-a." Wordlow is not a party to this appeal. Her appeal is pending in appeal number 1-24-1151.

but defendant kicked Buford in the head. Defendant grabbed Powell's clothes "real tight" and Powell, a postal employee, threatened to call the postal police. Defendant then stepped back and released Powell.

¶ 6 Powell had called the police as the situation began to escalate. During the altercation, she called police again to inform them that Buford was being attacked. Defendant and Wordlow went inside their home before the police arrived. Following the incident, Powell had soreness and took an aspirin.

¶ 7 On cross-examination, Powell stated that defendant grabbed her after kicking Buford in the head. Powell never touched defendant but attempted to block her "like *** a basketball player."

¶ 8 On redirect examination, Powell stated that Wordlow and Buford "scuffl[ed]" on the ground for four to five minutes.

¶ 9 Buford testified that she was neighbors with defendant and Wordlow, whom she identified in court. On May 23, 2023, at approximately 7:30 p.m., she was in the passenger seat of a vehicle talking to Powell, who stood outside the passenger door. Defendant and Wordlow approached them in a vehicle and spoke to Buford's friend. Defendant said, "look at that B," Buford rolled her window up, and defendant "instantly got upset."

¶ 10 Defendant and Powell were "having words" with one another, and Buford exited her vehicle to stand near Powell so Buford and Powell could go inside Buford's home. Buford told defendant that Buford did not want to speak to defendant and was not trying to fight her. Defendant swung at Buford with a fist, and Powell called the police. Defendant said, "F it" and struck Buford in the face with a fist. Wordlow "came out of nowhere" and tackled Buford to the ground.

Defendant kicked Buford in the head once, and Buford was struck approximately 20 times while on the ground.

¶ 11    Buford sustained "bruising" on her elbows, knees, face, and neck and received medical treatment. The State entered eight photographs of Buford's injuries into evidence. The photographs are included in the record on appeal, and this court has viewed them. They depict scraping and abrasions on Buford's elbows and shoulder and a small cut under one eye. The injuries to her elbows include peeling, exposed skin, and blood. Buford stated that the ground where the fight occurred contained concrete and rocks.

¶ 12    On cross-examination, Buford stated that she exited the vehicle because she wanted to go into her home with Powell.[2] Buford's injuries were from being "pulled left and right" on the concrete. Powell originally stood between Buford and defendant but stepped back while on the phone with the police. Defendant then struck Buford in the face with a fist. Wordlaw then tackled Buford to the ground, and defendant and Wordlaw both "ganged up" on her.

¶ 13    Defendant testified that she and Wordlow were coming home from defendant giving Wordlow a driving lesson. They saw Buford's boyfriend, Campo, whom defendant was close with, in a vehicle with Buford. Defendant began conversing with Campo, but Buford rolled the window up. Defendant exited her vehicle, stating that Buford was "real ignorant" for rolling the window up. Buford exited her vehicle, and Buford and Powell approached defendant.

¶ 14    Wordlow stated, "you're not gonna hit my momma," and she and Buford began "tussling" on the ground. Powell had grabbed defendant tightly in a "bear hug," stating that she was the police

___

[2] Buford's cross-examination was conducted by Wordlow's attorney and adopted by defendant's attorney.

and asking defendant if she wanted to go to jail. Defendant could not move and never struck Buford. Campo eventually stopped the fight between Buford and Wordlow, and defendant broke free of Powell. Defendant and Wordlow went into their home. Defendant called the police who arrived but did not arrest anyone as it was "word against another word."

¶ 15    Defendant stated that she and Buford used to get along but, prior to the incident, they did not get along and did not speak to one another.

¶ 16    On cross-examination, defendant stated that Buford approached Wordlow, but defendant did not know how Buford and Wordlow ended up fighting on the ground or who struck who first. Defendant stated she was not trying to fight as she was having surgery that next day, was almost 60 years old, and Buford was "twice younger" than her.

¶ 17    On redirect examination, defendant stated that she was nervous when Buford approached her because Buford "gets into it with everybody."

¶ 18    In closing, the State argued the evidence established that defendant and Wordlow each "committed battery against the two victims." Defendant's counsel, in response, argued that the complaining witnesses presented "inconsistent and contradictory testimony," Buford was the aggressor, and in any event, "mutual combat [wa]s not enough to prove a battery." Counsel further argued that "the complaint by *** Buford towards [defendant] was that [defendant] struck [Buford] multiple times with a closed fist *** and nothing in the complaint allege[d] any kicking which *** Buford contradictor[ily] testified to."

¶ 19    The trial court found defendant guilty of both counts of battery. In ruling, the court mentioned that "prior negative history" between defendant, Wordlow, and Buford "[set] the stage" for the events and went toward "interest, bias, and motive." The court mentioned that defendant

felt slighted by Buford rolling the window up and responded by calling Buford ignorant. The court noted that Buford and Powell were credible, especially in stating that defendant threw a punch and missed, as both witnesses could have lied and stated that the first punch connected. The court further mentioned that there was "contradicting" testimony, defendant was the initial aggressor, and mutual combat was inapplicable.

¶ 20 The court found defendant credible in testifying that she was unaware whether Wordlow or Buford struck the other first. The court also mentioned that while the injuries were not that "serious," with regard to Powell, the complaint charged that defendant caused Powell to suffer "pain," not "injury." The court also found that the testimony and photographs of Buford's injuries indicated strikes to the face and body.

¶ 21 Defendant was sentenced to one year of supervision, a drug and alcohol evaluation, and anger management counseling.

¶ 22 Defense counsel filed a motion to reconsider the finding of guilt or for a new trial alleging, *inter alia*, that the evidence at trial was contradictory and insufficient to prove defendant caused bodily harm to Buford or Powell. Defense counsel also filed a motion to reconsider sentence. The trial court denied both motions.

¶ 23 On appeal, defendant argues that the evidence was insufficient to prove her guilty beyond a reasonable doubt due to inconsistencies in Buford's and Powell's testimony and the State's failure to prove defendant caused them bodily harm.

¶ 24 In considering a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "

(Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant. *People v. Nere*, 2018 IL 122566, ¶ 69. The trier of fact's role is to "assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. A reviewing court will not substitute its judgment for that of the trier of fact with respect to those issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 25    The trier of fact need not "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). A conviction will not be set aside unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 26    To find defendant guilty of battery, the State needed to prove that she "knowingly without legal justification by any means *** cause[d] bodily harm to an individual." 720 ILCS 5/12-3(a)(1) (West 2022). Bodily harm, as contemplated by the statute, requires "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." (Internal quotation marks omitted.) *People v. Mimes*, 2014 IL App (1st) 082747-B, ¶ 29. In deciding whether a defendant caused bodily harm, the trier of fact may consider "direct evidence of an injury" and may infer injury based upon "circumstantial evidence in light of common experience." *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 31. Moreover, the "testimony of a

single witness, if positive and credible, is sufficient to convict." *People v. Hill*, 2023 IL App (1st) 150396, ¶ 23.

¶ 27    Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that defendant committed battery by causing bodily harm to Buford and Powell. Both Buford and Powell testified that defendant kicked Buford in the head while Buford was on the ground "tussling" with Wordlow. Buford also testified that defendant struck her face with a fist. Buford required medical attention and the photographs introduced at trial show scrapes and abrasions to her elbows, shoulder, and face, which she stated were sustained from strikes to her face and body while on a rocky, concrete surface. Powell testified that defendant grabbed her shirt "real tight," which caused Powell to become sore and need aspirin. The trial court found Buford's and Powell's testimony credible, a determination we will not reassess. *Siguenza-Brito*, 235 Ill. 2d at 224-25. While defendant posits that she did not commit the offenses and was not tried under a theory of accountability for Wordlow's conduct, the positive, credible testimony of Powell and Buford was sufficient to establish that defendant personally committed battery against Buford and Powell. See *Hill*, 2023 IL App (1st) 150396, ¶ 23.

¶ 28    Nevertheless, defendant argues that Buford's and Powell's testimony is inconsistent regarding the specifics of the altercation, including whether Buford was struck by defendant and whether defendant grabbed Powell, and the evidence did not prove that defendant caused them bodily harm. According to defendant, evidence that she kicked Buford "cannot justify her conviction" because she "was not charged with kicking" Buford.

¶ 29    Despite defendant's contentions, Buford and Powell testified consistently that defendant kicked Buford in the head. While Powell did not mention seeing defendant strike Buford in the

face, Buford stated that Powell had stepped away and was on the phone with police at that time, which Powell corroborated in her testimony. While Buford did not mention seeing defendant grab Powell, it is plausible that Buford did not witness that happen as Buford was on the ground tussling with Wordlow at that time. In any event, Buford also testified that defendant struck her in the face, *i.e.*, the conduct alleged in the charging instrument. Moreover, it is the trial court's responsibility to resolve any inconsistencies in the testimony, and even contradictory testimony does not necessarily render a witness incredible. See *Daniel*, 2022 IL App (1st) 182604, ¶ 102; *People v. Gray*, 2017 IL 120958, ¶ 47. The trial court found the testimony of both Buford and Powell to be credible. Defendant is requesting this court second-guess the trial court's credibility determinations, which we cannot do. See *Siguenza-Brito*, 235 Ill. 2d at 224-25.

¶ 30    As stated, bodily harm is "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." (Internal quotation marks omitted.) *Mimes*, 2014 IL App (1st) 082747-B, ¶ 29. Buford suffered multiple scrapes and abrasions from the altercation including a cut to the face. It is a reasonable inference that defendant's punch or kick to Buford's face and head could have resulted in this injury and others. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (all reasonable inferences are viewed in the light most favorable to the prosecution). The trier of fact was not required to "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 70. Additionally, Powell suffered pain and soreness that required her to take aspirin as a result of defendant grabbing her so tightly. We do not find "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Bradford*, 2016 IL

118674, ¶ 12. Therefore, the evidence was sufficient to find defendant guilty beyond a reasonable doubt of battery.

¶ 31 To the extent defendant further argues that "the State failed to prove beyond a reasonable doubt that [defendant] was not acting in self-defense," this theory is contradicted by defendant's trial testimony that Powell placed defendant in a "bear hug" such that defendant could not move and, further, that defendant never struck Buford. See *People v. Salas*, 2011 IL App (1st) 091880, ¶ 84 ("where a defendant denies using any force against the victim, it follows that he could not reasonably have believed that force was necessary to protect himself").

¶ 32 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 33 Affirmed.