2025 IL App (1st) 191336-U

No. 1-19-1336

Order filed June 18, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 14955 |
| | ) | |
| | ) | Honorable |
| RODGER BELL, | ) | Allen F. Murphy and |
| | ) | Patrick K. Coughlin, |
| Defendant-Appellant. | ) | Judges Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The evidence was sufficient to prove defendant guilty of attempted murder where a rational trier of fact could credit the evidence identifying defendant as the shooter.

¶ 2  Following a bench trial, defendant-appellant, Rodger Bell, was found guilty of attempted

murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2014)) and aggravated battery with a firearm (720

ILCS 5/12-3.05(e)(1) (West 2014)).[1] The court sentenced Mr. Bell to 35 years' imprisonment. On appeal, Mr. Bell argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt, because the victim recanted his prior identification of Mr. Bell as the shooter and the testimony of an eyewitness was inconsistent and rebutted by other evidence. For the reasons that follow, we affirm Mr. Bell's conviction.

¶ 3                                     I. BACKGROUND

¶ 4     Mr. Bell was charged by indictment with multiple offenses arising from the shooting of Lorenzo Cureton on June 23, 2014, in Riverdale, Illinois. The State proceeded on two counts of attempted first-degree murder with a firearm, aggravated battery with a firearm, aggravated intimidation of a witness, and harassment of a witness.

¶ 5     At trial, Mr. Cureton testified that he was currently serving an eight-year prison sentence for an armed habitual criminal conviction. The shooting in this case happened after he provided to law enforcement information about Mr. Bell relating to a forcible felony and testified before a grand jury about the information in May 2014.

¶ 6     In June 2014, Mr. Cureton was dating Angelique Wakefield, who lived near the 14000 block of South Tracy Avenue in Riverdale. He was at Ms. Wakefield's apartment nearly every day, and he would see Mr. Bell in the area. He had known Mr. Bell for a couple of months and identified him in court.

---

[1] The record spells Mr. Bell's first name as "Rodger" and "Roger." We adopt the spelling from the charging instrument and mittimus.

The Honorable Allen F. Murphy presided at Mr. Bell's bench trial. The Honorable Patrick K. Coughlin presided at Mr. Bell's sentencing.

¶ 7     On the day of the incident, shortly before 1 a.m., Mr. Cureton was outside Ms. Wakefield's apartment building with a crowd, including his friend Husan Harley, and Mr. Bell.[2] Mr. Cureton and Mr. Harley left for a couple of minutes to get food, then returned and parked across the street from Ms. Wakefield's apartment building. As Mr. Cureton walked across the street towards the apartment building, he heard someone yell, "give me a cigarette" from the sidewalk in front of him. He then heard 11 to 12 gunshots in front of him, coming from the direction of Ms. Wakefield's apartment building.

¶ 8     Mr. Cureton was shot in the chest and did not see the shooter. He described the pattern of gunshots as "pauses like the gun was stuck," and the gunshots all came from the same direction. As he ran away, he still heard gunshots. The gunshots eventually stopped when he was about a block away. He returned to the block where the shooting occurred. Police officers attempted to speak with him, but he "didn't feel like talking." Paramedics transported him to the hospital.

¶ 9     Mr. Cureton then testified that he did see the shooter and that it was not Mr. Bell. He denied seeing Mr. Bell after returning from getting food, and that Mr. Bell requested cigarettes. He also denied seeing Mr. Bell pull the firearm from a hoodie pocket, shoot at him, and run behind him after the shooting started. Mr. Cureton stated that he did not see the type of firearm the shooter used.

¶ 10     Mr. Cureton spoke with Riverdale police detective Gill Plumey around noon the day of the shooting.[3] He testified that Detective Plumey suggested that he should identify Mr. Bell as the shooter. Mr. Cureton did so, but said "it wasn't him." Mr. Cureton denied telling Detective Plumey he believed that Mr. Bell would try to harm his family if he testified against Mr. Bell.

---

[2] Husan's first name also appears in the record as "Hussain."
[3] Plumey testified that he had the rank of sergeant at the time of trial.

¶ 11    On June 26, 2014, Detective Plumey returned to the hospital with Assistant State's Attorney (ASA) Tom Hardman. Mr. Cureton spoke with ASA Hardman outside the presence of Detective Plumey and agreed to provide a video recorded statement, which was not published at trial. Mr. Cureton testified that he did not tell ASA Hardman that Detective Plumey told him whom to identify as the shooter. Mr. Cureton acknowledged that in the statement, he identified Mr. Bell as the shooter but testified that Mr. Bell was not the shooter. During his video recorded statement, he was shown a photograph of Mr. Bell, identified as People's Exhibit No. 1, and signed the photograph identifying Mr. Bell as the shooter. Mr. Cureton acknowledged his signature on the photograph but testified that Mr. Bell had dreadlocks in the photograph and a "shorter fade" at trial.

¶ 12    On May 24, 2018, the court date before trial, defense counsel and an investigator interviewed Mr. Cureton, and he told them that Mr. Bell was not the shooter. Mr. Cureton repeated the same to ASA Luz Toledo. He did not want to testify against Mr. Bell, who was "not the person that shot [him]." He was also concerned about testifying because he was currently incarcerated and "[i]t's f*** up down there."

¶ 13    On cross-examination, Mr. Cureton confirmed that the first time he talked to Detective Plumey on the day he was shot, he told him that Mr. Bell was not the shooter. Detective Plumey showed Mr. Cureton a photograph of Mr. Bell, and Mr. Cureton told him that Mr. Bell was not the shooter. Mr. Cureton eventually identified Mr. Bell as the shooter, because Detective Plumey threatened to hold a prior incident "over [Mr. Cureton's] head." Mr. Cureton was afraid for his and his family's safety if he told the police who had shot him. Mr. Cureton believed the real shooter was deceased.

¶ 14    Ms. Wakefield testified that she was currently in jail because a contempt warrant was issued for her arrest relating to this case. She met Mr. Cureton and Mr. Bell, whom she identified in court, in March 2014. Mr. Bell had been inside her home "quite a few times" and met her children. She and Mr. Cureton were not in a relationship at the time of the shooting, but she knew him from the neighborhood.

¶ 15    The morning of the shooting, at approximately 1 a.m., Ms. Wakefield was inside her apartment and agreed to let Mr. Cureton shower there. He indicated he would be arriving "any minute," so she waited by her window. The distance from her window to the street was about seven feet. While at the window, Ms. Wakefield saw and heard Mr. Cureton, Mr. Bell, and their other friends on the street. Ms. Wakefield was familiar with Mr. Bell's voice. Nothing blocked her view of the street, the streetlights were illuminated, and nothing covered Mr. Bell's face.

¶ 16    Mr. Harley and another friend asked Mr. Cureton to take them to get some food. Ms. Wakefield did not know when they left or how long they had been gone, but she later saw food in their hands. She then overheard Mr. Bell ask Mr. Cureton if he had any cigarettes. Mr. Cureton answered that he did not, and Mr. Bell told him to "come here." No one else was talking. He walked toward Mr. Bell, and Mr. Bell shot him with a small black firearm. The first three gunshots were "right behind the other," then the gunshots paused when Mr. Bell hit the firearm or fixed it. When he was shooting, Ms. Wakefield viewed his whole body, first from the front and then the right side. After shooting Mr. Cureton, Mr. Bell ran across the street into another complex. Ms. Wakefield did not see Mr. Bell again that evening.

¶ 17    On June 23, 2014, Ms. Wakefield identified Mr. Bell in a photograph array, People's Exhibit No. 15, and signed the photograph identifying him as the shooter. She stated that Mr. Bell had dreadlocks in the photograph but no longer had dreadlocks at trial. On June 26, 2014, Detective

Plumey and ASA Hardman interviewed Ms. Wakefield at the hospital. She identified People's Exhibit No. 16 as a photograph of Mr. Bell she was shown during the interview bearing her signature and dated June 26, 2014.

¶ 18    On cross-examination, Ms. Wakefield testified that Mr. Cureton arrived at her building three to five minutes after he called, and she had been standing at the window continuously. At some point, she saw Mr. Harley and the other friend with food in their hands, but she did not see Mr. Cureton leave. She never left the window.

¶ 19    Ms. Wakefield gave a recorded statement with Detective Plumey and ASA Hardman at the hospital when she was visiting Mr. Cureton. She did not recall telling them that she did not hear who called Mr. Cureton back. She saw Mr. Bell run across the street to another building. Mr. Cureton ran to her left, but she could not see down the street.

¶ 20    Detective Plumey testified that when he spoke with Mr. Cureton on the day of the shooting, the police did not have a suspect. Mr. Cureton told him that Mr. Bell shot him, and that Mr. Bell would harm him and his family if he testified against him. Detective Plumey never suggested the shooter's identity to Mr. Cureton or told Mr. Cureton that he would be charged if he refused to identify Mr. Bell as the shooter. Mr. Cureton never told Detective Plumey that Mr. Bell was not the shooter. Mr. Cureton again identified Mr. Bell as the shooter on June 26, 2014.

¶ 21    Mr. Bell filed a motion for a directed verdict, which the court granted as to the counts for aggravated intimidation of a witness and harassment of a witness.

¶ 22    Mr. Bell's case-in-chief consisted of publishing portions of Ms. Wakefield's recorded interview. The video is included in the record on appeal and has been viewed by this court. In the video, Ms. Wakefield said she did not know for sure who asked Mr. Cureton for cigarettes.

¶ 23    Following arguments, the trial court noted that Mr. Cureton testified that Mr. Bell did not shoot him, and Ms. Wakefield had to be arrested in contempt to testify. Notwithstanding, the court found Ms. Wakefield "very credible," "compelling," and "very matter of fact." Regarding the location of the shell casings, the court stated:

> "I understand much is being made of where this cluster of fired evidence is. That doesn't necessarily mean that's exactly where the shooting occurred. We're talking about objects that can bounce on that pavement, that pavement being the street."

The trial court found Mr. Bell guilty of attempted murder and aggravated battery with a firearm. The court denied Mr. Bell's motion to reconsider.

¶ 24    The trial court merged the attempted murder and aggravated battery with a firearm counts and sentenced Mr. Bell to 35 years' imprisonment on attempted murder. Mr. Bell filed a motion to reconsider his sentence, which the trial court denied. Mr. Bell now appeals.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, Mr. Bell contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of attempted murder. Specifically, he argues that Mr. Cureton's testimony that he was not the shooter and the inconsistency of Ms. Wakefield's testimony, along with the other evidence, created a reasonable doubt of his identity as the shooter.

¶ 27    When reviewing a challenge to the sufficiency of the evidence, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a bench trial, "it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We

will not retry the defendant. *People v. Nere*, 2018 IL 122566, ¶ 69. This court will reverse a conviction only where the evidence is so improbable, unreasonable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 28    To sustain a conviction for attempted murder, the State must prove beyond a reasonable doubt that the defendant performed an act that constituted a substantial step toward committing a murder and had the criminal intent to kill the victim. See 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2014); *People v. Teague*, 2013 IL App (1st) 110349, ¶ 22. As part of its burden, the State must prove beyond a reasonable doubt the identity of the offender. *People v. Lewis*, 165 Ill. 2d 305, 356 (1995). Here, Mr. Bell only challenges the sufficiency of the evidence regarding his identity as the shooter.

¶ 29    Prior statements of identification are admissible where the declarant testifies at trial and is subject to cross-examination. 725 ILCS 5/115-12 (West 2014); see also 725 ILCS 5/115-10.1 (West 2014) (prior inconsistent statements admissible where the declarant testifies and is subject to cross-examination and acknowledges under oath having made the statement). When presented with recanted statements, the trier of fact must "weigh the statement, weigh the disavowal and determine which is to be believed." *People v. Armstrong*, 2013 IL App (3d) 110388, ¶ 26; see *People v. Jackson*, 2020 IL 124112, ¶ 67 (noting recantation of testimony is generally regarded as unreliable).

¶ 30    Here, taking the evidence in the light most favorable to the State, we find that a rational trier of fact could find Mr. Bell guilty of attempted murder. The State presented evidence that he was the shooter through Mr. Cureton's prior identifications and Ms. Wakefield's identifications.

¶ 31    Turning first to Mr. Cureton, he identified Mr. Bell as the shooter to the authorities on the day of the shooting and again a few days later. Years later, shortly before trial, Mr. Cureton recanted his prior identification to defense counsel and testified that Mr. Bell was not the shooter.

Detective Plumey, however, confirmed that Mr. Cureton twice identified Mr. Bell as the shooter soon after the shooting, including identifying him in a photograph. Therefore, a rational trier of fact was free to accept Mr. Cureton's prior statements identifying Mr. Bell as the shooter as more credible and sufficient to support his guilt of attempted murder. See *Armstrong*, 2013 IL App (3d) 110388, ¶ 24 (a testifying witness's prior inconsistent statement alone may support a criminal conviction).

¶ 32    Mr. Bell emphasizes that Mr. Cureton, as the victim, recanted his prior identification and maintained at trial that Mr. Bell was not the shooter. He points to Mr. Cureton's testimony that he initially identified Mr. Bell because Detective Plumey threatened to charge Mr. Cureton with a criminal case. However, the record does not reflect that Mr. Cureton told anyone that Mr. Bell was not the shooter until shortly before the trial, nearly four years after his prior identifications made soon after the shooting. Detective Plumey denied he threatened Mr. Cureton to secure his identification of Mr. Bell as the shooter. Moreover, Mr. Cureton never told ASA Hardman, outside of Detective Plumey's presence, that Detective Plumey influenced his identification of Mr. Bell. Based on the evidence presented, a rational trier of fact could reasonably conclude that Mr. Cureton's identification of Mr. Bell as the shooter soon after the shooting was more credible than his trial testimony denying that Mr. Bell was the shooter. See *People v. Green*, 2017 IL App (1st) 152513, ¶¶ 104-107 (after weighing the evidence a trier of fact can find the prior statement credible).

¶ 33    Apart from Mr. Cureton's prior identifications of Mr. Bell as the shooter, Ms. Wakefield's eyewitness identification soon after the shooting and again at trial were sufficient evidence alone to establish Mr. Bell's identity as the shooter. When a conviction depends on eyewitness testimony, we must decide whether any trier of fact could reasonably accept it to be true beyond a reasonable

doubt. *Gray*, 2017 IL 120958, ¶ 36. The testimony of a single witness is sufficient to support a conviction if the witness viewed the accused under circumstances permitting a positive identification. *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 42. An eyewitness's testimony "may be found insufficient only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." (Internal quotation marks omitted.) *Gray*, 2017 IL 120958, ¶ 36.

¶ 34    When assessing the reliability of identification testimony, Illinois courts use the test established in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). *People v. Corral*, 2019 IL App (1st) 171501, ¶ 75. The factors include (1) the witness's opportunity to view the offender at the time of the offense, (2) the witness's degree of attention at the time of the offense, (3) the witness's prior description of the offender, (4) the witness's level of certainty at the identification confrontation, and (5) the length of time between the offense and the identification confrontation. *People v. Slim*, 127 Ill. 2d 302, 307-08 (1989). Other relevant factors include "whether the witness was acquainted with the suspect before the crime, and whether there was any pressure on the witness to make a certain identification." *People v. Brooks*, 187 Ill. 2d 91, 130 (1999).

¶ 35    In reviewing each factor, we find that Ms. Wakefield's identification was credible. First, she had an opportunity to view Mr. Bell, as nothing obstructed her view of the street from her window and the area was illuminated by streetlights. She had known Mr. Bell for a couple of months before the shooting and was familiar with his appearance and voice. Her window was about seven feet from the street, which permitted her to observe the activity in front of her building and to hear the conversation between Mr. Bell and Mr. Cureton. She observed Mr. Bell's full body from the front and side view and nothing obscured his face.

¶ 36    Ms. Wakefield also demonstrated a high degree of attention at the time of the shooting as she continuously looked out of her window waiting for Mr. Cureton to arrive. She detailed the events preceding the shooting, including overhearing and seeing Mr. Bell call for Mr. Cureton to "come here" prior to shooting him. She also described the sequence of gunshots in detail, noting that the firearm appeared to jam such that Mr. Bell hit the firearm before discharging it again.

¶ 37    As to the remaining factors, Ms. Wakefield identified Mr. Bell in court and on two prior occasions right after the shooting. She first identified him the day of the shooting in a photograph array, then identified him in a photograph a few days later. She noted that Mr. Bell no longer had dreadlocks at trial as depicted in the photograph. Moreover, he was not a stranger to her, as he had been inside her house "quite a few times" and met her children.

¶ 38    Based on the evidence presented at trial, Ms. Wakefield positively identified Mr. Bell as the shooter. The five *Biggers* factors weigh strongly in favor of finding that she viewed the shooter under circumstances permitting a positive identification. Therefore, when viewed in the light most favorable to the State, a reasonable trier of fact could have found Ms. Wakefield's identification of Mr. Bell as the shooter to be credible and that the State proved beyond a reasonable doubt that he committed attempted murder.

¶ 39    Nevertheless, Mr. Bell asserts that Ms. Wakefield's identification was unsatisfactory because her testimony was inconsistent and rebutted by physical evidence, mainly as to her ability to view the shooting from her window, the location where shell casings were recovered compared to her building's location, and identifying who had asked for a cigarette immediately prior to the shooting. He essentially is asking this court to assess Ms. Wakefield's credibility and weigh the evidence in his favor. The trial court, as finder of fact, was responsible for those determinations. See *Siguenza-Brito*, 235 Ill. 2d at 228. The trial court found Ms. Wakefield "very credible" and

considered the inconsistencies Mr. Bell raises here. We will not substitute our judgment for that of the trial court as trier of fact on those matters. *People v. Patterson*, 314 Ill. App. 3d 962, 969 (2000).

¶ 40     Mr. Bell also contends that no physical evidence connected him to the shooting. However, physical evidence is not required to sustain a conviction, and the testimony of a single witness, if positive and credible, is sufficient to convict. *Hill*, 2023 IL App (1st) 150396, ¶ 23. Viewing all the evidence in the light most favorable to the State, as we must, we cannot say that the evidence was "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to defendant's guilt of attempted murder. *Slim*, 127 Ill. 2d at 307.

¶ 41                                         CONCLUSION

¶ 42     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 43     Affirmed.